COMMONWEALTH vs. RUI M. BARROS.

Plymouth. May 10, 2001. - September 28, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Search and Seizure,* Protective frisk, Threshold police inquiry. *Constitutional Law,* Search and seizure. *Firearms.*

Police officers, acting on the basis of an informant's tip that he had seen an individual with a handgun, "seized" a defendant within the meaning of the Fourth Amendment to the United States Constitution, where one of the officers pursued the defendant, pointed at him, and said, "Come here" [173-176]; however, the mere fact of possession or carrying of a weapon, without more, did not give rise to an objectively reasonable suspicion of criminal activity, at the time of seizure, as required to conduct a stop and frisk; the defendant's motion to suppress evidence produced by the stop and frisk should have been allowed [176-178]. SOSMAN, J., with whom CORDY, J., joined, concurring.

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on July 29, 1998.

A pretrial motion to suppress evidence was heard by *Richard D. Savignano,* J., and the case was heard by *David G. Nagle, Jr.,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

*Sheila T. Curran* for the defendant.

SPINA, J. The defendant, Rui M. Barros, was convicted in the District Court of carrying a firearm without a license and possession of ammunition without a firearm identification card. On appeal he claims error in the denial of his motion to suppress the firearm and the ammunition taken from his person after a police officer stopped him based on an anonymous tip and, he argues, without reasonable suspicion to believe he was committing a crime. The Appeals Court, concluding that the police of-

ficer "had insufficient basis to detain and search the defendant" when he did, vacated the order denying the defendant's motion to suppress and reversed his convictions. *Commonwealth* v. *Barros*, 49 Mass App. Ct. 613, 614 (2000). We granted the Commonwealth's application for further appellate review. We reach the same conclusion as the Appeals Court and reverse the defendant's convictions.

1. *Background.* The facts are set forth in the opinion of the Appeals Court, and need not be repeated in detail. Acting on an anonymous tip he had just received,[1] Brockton police Officer Christopher McDermott, who was on duty and in uniform, drove his marked cruiser to the area of Main and Hancock Streets to look for a light-skinned Cape Verdean male, approximately five feet, six inches tall; wearing a blue baseball cap, a blue and white T-shirt, and blue jeans. The anonymous informant reported seeing the man take a handgun from his waistband and show it to others who were with him.

Within about three minutes of receiving the tip, McDermott came upon a group of Cape Verdean males walking along Main Street. One, the defendant, was similar in appearance to the description given by the informant. The officer recognized the defendant as someone he previously had told not to "hang around" in front of stores in that neighborhood. He did not know whether the defendant was carrying a weapon. He drove alongside the group and said to the defendant, "Hey you . . . I want to speak with you." The defendant looked at the officer, but otherwise kept walking and ignored the request. McDermott stopped his cruiser, got out, walked up to the defendant and, as two other officers arrived, pointed at him and said, "Hey you. I wanna talk to you. Come here." The defendant turned away from the officer, then stopped.[2]

The defendant moved his hands toward the front of his waistband. Concerned for his safety, McDermott drew his

---

[1]The informant, a middle-aged white male whom the officer had never met, said that he wished not to identify himself, beyond that he was a businessman who worked on Main Street, but that he had information he wanted to give to the officer.

[2]The motion judge's finding that the defendant continued walking is not supported by the record.

service weapon and told the defendant to raise his hands. The defendant did not respond, so the officer repeated his command. The defendant raised his hands, then turned and faced the officer, taking four steps backward. Concerned that the defendant would flee, the officer handcuffed him, pat frisked him, and removed a loaded handgun from the front of the defendant's waistband. When asked whether he had a license to carry the firearm, the defendant said he did not. He was placed under arrest.

In denying the motion to suppress, the motion judge concluded that (1) the initial interaction between the officer and the defendant involved merely two requests that the defendant stop and speak with the officer; (2) the information provided by the informant was corroborated by the officer's own observations of the defendant's appearance and the gesture the defendant made to the front of his waistband while his back was turned toward the officer; (3) the officer was justified in undertaking the precautionary measures that he did for his own safety; and (4) the defendant was seized in a constitutional sense only when the officer drew his service firearm.

2. *Seizure of the defendant.* The Appeals Court correctly perceived that determining the precise moment of seizure was critical to resolution of the issue of suppression. *Commonwealth* v. *Barros*, 49 Mass. App. Ct. 613, 616-618 (2000). If, as the motion judge determined, seizure occurred when the officer drew his weapon out of concern for his own safety after the defendant made the gesture toward his waistband, then the motion to suppress was correctly denied. See *Commonwealth* v. *Fraser*, 410 Mass. 541, 544-545 & n.4 (1991). If, however, seizure occurred when the officer pursued the defendant, pointed at him and said, "Come here," as the defendant argues,[3] the result is altogether different. See *Commonwealth* v. *Barros*, *supra* at 616-617.

Police have seized a person in the constitutional sense "only if, in view of all the circumstances surrounding the incident, a

---

[3]The Commonwealth contends that the defendant makes this argument for the first time on appeal. We disagree. We have reviewed the defendant's motion to suppress and counsel's argument at the suppression hearing, and we are satisfied that the issue was raised at that time.

reasonable person would have believed that he was not free to leave." *United States* v. *Mendenhall,* 446 U.S. 544, 554 (1980) (opinion of Stewart, J.).[4] Under the *Mendenhall* test, the police do not effectuate a seizure merely by asking questions unless the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe that he was not free to turn his back on his interrogator and walk away. See *id.* at 555. See also *Immigration & Naturalization Serv.* v. *Delgado,* 466 U.S. 210, 216-217 (1984); *Florida* v. *Royer,* 460 U.S. 491, 497 (1983); *Commonwealth* v. *Sanchez,* 403 Mass. 640, 644-645 (1988); 4 W.R. LaFave, Search and Seizure § 9.3(a), at 88-93 (3d ed. 1996).

The judge's finding that McDermott's initial request to the defendant to stop for questioning was not a seizure is supported by the record. McDermott remained in his cruiser while asking to speak to the defendant, and he did not impede or restrict the defendant's freedom of movement. As we stated in *Commonwealth* v. *Murdough,* 428 Mass. 760, 763 (1999), "officers may make inquiry of anyone they wish and knock on any door, so long as they do not implicitly or explicitly assert that the person inquired of is not free to ignore their inquiries." See *Immigration & Naturalization Serv.* v. *Delgado, supra* at 216 ("police questioning, by itself, is unlikely to result in a Fourth Amendment [to the United States Constitution] violation"); *Commonwealth* v. *Stoute,* 422 Mass. 782, 789 (1996) ("not every encounter between a law enforcement official and a member of the public constitutes an intrusion of constitutional dimensions requiring justification"). See also *Florida* v. *Bostick,* 501 U.S. 429, 434 (1991); *United States* v. *Young,* 105 F.3d 1 (1st Cir. 1997).

However, the officer's second request had a compulsory dimension to it that his first request did not.[5] "[A]n initially consensual encounter between a police officer and a citizen can

---

[4]Although the "free to leave" standard is commonly referred to as the *Mendenhall* standard, this language appears in Justice Stewart's opinion, joined in relevant part only by then-Justice Rehnquist. The test was adopted by a majority of the Supreme Court in *Immigration & Naturalization Serv.* v. *Delgado,* 466 U.S. 210, 215 (1984).

[5]While it is true that, in reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error, see,

be transformed into a seizure or detention within the meaning of the Fourth Amendment, 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Immigration & Naturalization Serv.* v. *Delgado, supra* at 215, quoting *United States* v. *Mendenhall, supra* at 554 (opinion of Stewart, J.). See *Terry* v. *Ohio*, 392 U.S. 1, 19 n.16 (1968). Rights under art. 14 of the Declaration of Rights of the Constitution of the Commonwealth are similarly implicated. See *Commonwealth* v. *Stoute, supra* at 785-786. Such a transformation can occur if the target of the inquiry refuses to answer and the "police take additional steps . . . to obtain an answer." *Immigration & Naturalization Serv.* v. *Delgado, supra* at 216. Here, after the defendant broke eye contact with McDermott and refused to respond to the first request, McDermott stepped out of his cruiser and pursued the defendant. In *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981), we stated that "[s]tops provoke constitutional scrutiny because they encumber one's freedom of movement. Pursuit that appears designed to effect a stop is no less intrusive than a stop itself. . . . [A] stop starts when pursuit begins."

The Commonwealth contends that the second "request" to stop does not transform the request into a seizure because the request was not "sufficiently intimidating." We disagree. The second request must be considered "in view of all of the circumstances surrounding the incident." *United States* v. *Mendenhall, supra* at 554 (opinion of Stewart, J.). Although the uncommunicated subjective intent of the officer in attempting to effectuate a stop is irrelevant in the *Mendenhall* analysis,[6] the fact that the officer pursued the defendant by leaving his cruiser and walking up to him after being rebuffed is highly relevant in

e.g., *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), a judge's "findings of ultimate fact deriving from the subsidiary findings are open to reexamination by [the reviewing] court, as are his conclusions of law." *Commonwealth* v. *Angivoni*, 383 Mass. 30, 33 (1981), quoting *Commonwealth* v. *Meehan*, 377 Mass. 552, 557 (1979), cert. dismissed, 445 U.S. 39 (1980).

[6]See 4 W.R. LaFave, Search and Seizure § 9.3(a) (3d ed. 1996); *United States* v. *Taylor*, 956 F.2d 572 (6th Cir.) (en banc), cert. denied, 506 U.S. 952 (1992); *United States* v. *Aguiar*, 825 F.2d 39 (4th Cir.), cert. denied, 484 U.S. 987 (1987).

determining whether a reasonable person, in view of all the circumstances, would have felt free to terminate the encounter and leave. Moreover, when McDermott pointed at the defendant in the presence of two other officers and said: "Hey you. I wanna talk to you. *Come here*" (emphasis added), he was communicating what a reasonable person would understand as a command that would be enforced by the police power. See *Commonwealth* v. *Stoute, supra* at 790 ("We need not decide whether pursuit commenced when the officers drove after the defendant or [a more likely alternative] *when Officer Murphy made his second request to the defendant to stop*" [emphasis added]). Evidence that the defendant did in fact stop suggests that he believed, as would any reasonable person, that he was not free to leave. See *State* v. *Quezada*, 141 N.H. 258, 260 (1996) (submission after officer's statement to defendant, "Hey you, stop," indicated that compliance was not optional and was seizure). We conclude, as did the Appeals Court, that the defendant was seized when the officer pursued him and told him, "Come here."

3. *Reasonable suspicion on the basis on an anonymous tip.* The question that remains is whether McDermott, at the time of seizure, had an objectively reasonable suspicion of criminal activity, based on specific and articulable facts. See *Commonwealth* v. *Stoute, supra* at 789, citing *Terry* v. *Ohio, supra* at 21. *Commonwealth* v. *Lyons*, 409 Mass. 16, 18-19 (1990). See *Florida* v. *J.L.*, 529 U.S. 266, 271 (2000) ("reasonableness of official suspicion must be measured by what the officers knew before they conducted their search"). The Appeals Court concluded that he did not, and we agree.

"[I]f the police conduct an investigatory stop based on an informant's tip, our evaluation of the tip's indicia of reliability will be focused on the informant's reliability and his or her basis of knowledge. Independent police corroboration may make up for deficiencies in one or both of these factors." *Commonwealth* v. *Lyons, supra* at 19. The tip, and McDermott's corroboration of the defendant's identity, did not provide suf-

Commonwealth *v.* Barros.

ficient indicia of reliability for suspecting that the defendant had a handgun.[7] See *Florida* v. *J.L.*, *supra* at 272 ("An accurate description of a subject's readily observable location and appearance . . . will help police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity"). Moreover, even if the tip were reliable, McDermott still did not have reasonable suspicion that the defendant was doing anything illegal to justify seizure, and nothing in this record indicates that McDermott made any observations to support reasonable suspicion of criminal activity. As we said in *Commonwealth* v. *Alvarado*, 423 Mass. 266, 269 (1996), "[c]arrying a gun is not a crime. Carrying a firearm without a license (or other authorization) is. G. L. c. 269, § 10 (*a*)." An anonymous tip that someone is carrying a gun does not, without more, constitute reasonable suspicion to conduct a stop and frisk of that individual.[8] See *Commonwealth* v. *Couture*, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990) ("mere possession of a

---

[7]The concurring opinion takes issue with our conclusion that the tip was anonymous. In support, the concurrence cites the concurring opinion by Justice Kennedy of the Supreme Court of the United States in *Florida* v. *J.L.*, 529 U.S. 266, 276 (2000). *Post* at 181 n.5. While Justice Kennedy's well-reasoned opinion provides valuable context to the issue of anonymous tips, the situation he described was not before the Court, and he was not writing for the majority of the Court. The concurring opinion also cites *United States* v. *Sierra-Hernandez*, 581 F.2d 760 (9th Cir.), cert. denied, 439 U.S. 936 (1978), for the proposition that face-to-face informants should be treated differently from unnamed anonymous callers. *Post* at 181 n.5. In the circumstances, we see no reason to depart from precedent that treats informants who wish to preserve their anonymity as anything other than anonymous informants. At the time of the stop, McDermott had corroborated only innocent details of the tip, and that is not sufficient to establish a reasonable suspicion of criminal activity. See W.R. LaFave, Search and Seizure § 3.4(a) (3d ed. 1996). Moreover, in the *Sierra-Hernandez* case there were other indicia of reliability that compensated for the deficiency of the anonymous tip. For example, the officer knew the location described to be the site of previous criminal activity. *Id.* at 763. The Commonwealth did not present any such evidence at the hearing. Additionally, in the *Sierra-Hernandez* case the target of the tip was in a moving vehicle. *Id.* Therefore, that case presented exigent circumstances which did not exist here.

[8]The Commonwealth referred to the tipster as an anonymous informant throughout the proceedings.

handgun was not sufficient to give rise to a reasonable suspicion that the defendant was illegally carrying that gun").[9]

The Commonwealth argues that, assuming arguendo, the tip did not provide the requisite reasonable suspicion, we should consider the defendant's suspicious activities, including his breaking eye contact with the officer and his refusing to answer the officer's initial questions. Such factors cannot provide reasonable suspicion for justification of a detention or seizure. It was the defendant's right to ignore the officer. See *Commonwealth* v. *Silva*, 366 Mass. 402, 406-407 (1974). As we stated in *Commonwealth* v. *Thibeau*, *supra* at 764, "[an officer's] suspicion must be reasonable *before* the [stop] begins. Were the rule otherwise, the police could turn a hunch into a reasonable suspicion by inducing the conduct justifying the suspicion."[10]

The order denying the defendant's motion to suppress is vacated and an order shall be entered allowing that motion. The judgments of conviction are reversed.

*So ordered.*

SOSMAN, J. (concurring, with whom Cordy, J., joins). I concur with the result reached by the court, as it is an unavoidable one

---

[9]The exigency which existed in *Commonwealth* v. *Foster*, 48 Mass. App. Ct. 671 (2000), and justified the patfrisk is not present in the instant case. There is no indication that the defendant was "armed *and* dangerous" (emphasis added), *id.* at 673, that the police were aware of other incidents involving use of weapons in the neighborhood, *id.* at 676, or that McDermott "had a reasonable suspicion that [the] defendant posed a threat to the public." *Id.* at 677. While police officers have a duty to investigate potential dangers to the public, *Commonwealth* v. *Fraser*, 410 Mass. 541, 544-545 & n.4 (1991), an anonymous tip of possession of a gun, without more, does not justify a police officer's stop and frisk.

[10]The Commonwealth, on appeal, for the first time asks us to recognize the objective authority of an officer to demand any person carrying a firearm to display his license. See G. L. c. 140, § 129C ("Any person who, while not being within the limits of his own property or residence . . . shall on demand of a police officer or other law enforcement officer, exhibit his license to carry firearms, or his firearm identification card . . ."). The Commonwealth's brief does not rise to the level of adequate appellate argument on this issue, so we decline to consider it. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). The author of the brief was not the attorney who argued for the Commonwealth.

on the record and argument presented to us, but write separately to echo the sentiments expressed in the concurring opinion of the Appeals Court. *Commonwealth* v. *Barros*, 49 Mass. App. Ct. 613, 620-621 (2000) (Jacobs, J., concurring).

It appears likely that the circumstances known to Officer Mc-Dermott did include an objective basis for suspecting that the defendant did not have a license to carry a firearm (i.e., the defendant's apparent youth), but the Commonwealth failed to introduce sufficient evidence on that decisive issue. As the Appeals Court noted, evidence that the defendant appeared to be underage, had it been presented, would have justified a reasonable suspicion that the defendant did not have a license to carry a firearm. At the time of this stop, G. L. c. 140, § 131, as amended through St. 1996, c. 200, § 28, provided that a license to carry firearms could not be issued to anyone under eighteen years of age.[1] The defendant was seventeen years old (one month shy of his eighteenth birthday) on the day he was stopped. Officer McDermott testified that he knew the defendant as one of "a group of kids that live in that area," but provided no assessment (beyond characterizing him as a "kid[]") as to whether his appearance was sufficiently youthful to make his eligibility for a license to carry firearms appear unlikely. The presentation of that additional piece of evidence would have taken only a single question of Officer McDermott.[2] However, the officer's mere reference to the defendant as a "kid[]" and the motion judge's reference to him as a "young man" do not allow us to draw the more precise conclusion that he appeared to be less than eighteen years old.

On appeal, the Commonwealth's brief referenced another potential ground (G. L. c. 140, § 129C) that would arguably justify this stop, but did so only in a single, conclusory sentence

---

[1]The statute was subsequently rewritten and now permits issuance of a license to carry only to persons age twenty-one years or older. St. 1998, c. 180, § 41 (effective October 21, 1998).

[2]Other evidence as to the defendant's apparent age on the day in question must also have been readily available. Beyond Officer McDermott's observations, there was presumably a booking photograph taken that same day. Or, merely asking the motion judge to make observations of the defendant in the court room and include them in his findings would likely have sufficed. (The evidentiary hearing was held just two months after this stop, and the judge, having seen the defendant, referred to him in his findings as a "young man.")

that does not rise to the level of adequate appellate argument. Hence, the court's opinion justifiably refuses to consider the issue. *Ante* at 178 n.10. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

The statute provides in part: "Any person who, while not being within the limits of his own property or residence . . . shall on demand of a police officer or other law enforcement officer, exhibit his license to carry firearms . . . . Upon failure to do so such person may be required to surrender to such officer said firearm, rifle or shotgun which shall be taken into custody as under [G. L. c. 140, § 129D], except that such firearm, rifle or shotgun shall be returned forthwith upon presentation within thirty days of said license to carry firearms . . . ." G. L. c. 140, § 129C. The statute thus gives an officer the right to demand production of a proper license from anyone carrying a firearm and, if such license is not produced, to at least confiscate that firearm until such time as a valid license is produced.[3] We have never addressed the power of an officer to stop someone in order to make a demand for a license under G. L. c. 140, § 129C, and the Commonwealth's failure to brief any of the issues surrounding the proper exercise of such a power prevents us from addressing those issues in this case.[4] It is, however, an

[3]The final sentence of the section leaves open the possibility of prosecution for any other firearms offenses: "Nothing in this section shall prevent any person from being prosecuted for any violation of this chapter." G. L. c. 140, § 129C.

[4]Officer McDermott's failure to reference G. L. c. 140, § 129C, in his testimony would not preclude us from considering the issue. It is true that the officer's testimony covered only what he actually said to the defendant — i.e., "I want to speak with you" and "I wanna talk to you" — and did not expressly state what the intended subject matter of that "talk" was to have been. Because the encounter took a sudden turn when the defendant reached for his waistband, the record could not reflect the contents of the conversation that would have taken place had the defendant stopped and spoken with the officer. It is safe to infer, however, that because the only purpose in speaking to the defendant concerned his carrying of a weapon, that intended "talk" had something to do with whether his possession of a gun was lawful. (After the gun was taken from the defendant, the officer did ask him if he had a license.)

Moreover, as we have long held, it is not the precise thought process going through an officer's head that controls the constitutionality of any seizure. Rather, it is whether the surrounding facts and circumstances known to the officer would, viewed objectively, justify the requisite reasonable suspicion or

intriguing suggestion, and one that would at least arguably justify a stop on the facts of this case.[5]

---

probable cause. See *Commonwealth* v. *Santana*, 420 Mass. 205, 208 (1995), quoting *Commonwealth* v. *Ceria*, 13 Mass. App. Ct. 230, 235 (1982) ("police conduct is to be judged 'under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved' "); *Commonwealth* v. *Petrillo*, 399 Mass. 487, 491 (1987), quoting *United States* v. *McCambridge*, 551 F.2d 865, 870 (1st Cir. 1977) ("validity of an arrest is normally gauged by an objective standard rather than by inquiry into the officer's presumed motives"). Thus, we need not concern ourselves with whether Officer McDermott actually intended to start his "talk" with the defendant by demanding production of a license. Whatever Officer McDermott's precise intent or plan was, we need only consider whether the facts and circumstances known to him were sufficient to justify a stop of the defendant pursuant to G. L. c. 140, § 129C.

[5]I do not agree with the court's assessment that the "anonymous informant" in this case lacked sufficient reliability, *ante* at 176-177, and I thus conclude that there was reasonable suspicion that the defendant was carrying a firearm.

The facts surrounding Officer McDermott's encounter with the informant take this case well out of the category of the usual "anonymous tip." While on patrol in a marked cruiser, Officer McDermott was flagged down by a man driving a white Dodge pickup truck. Officer McDermott described the man as a "[m]iddle-aged white male, salt and pepper type hair, short, stocky." The man was "well-dressed," wearing slacks and "maybe a collared shirt." He identified himself as "a local businessman" who worked on Main Street. The man appeared "concerned." The man "asked to remain anonymous," and is thus properly referred to as an "anonymous informant," but he is hardly the equivalent of an anonymous telephone tipster who can never be located or identified.

The reliability of persons who contact the police face to face is greater than those who contact the police through completely anonymous and untraceable methods. "An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring." *Florida* v. *J.L.*, 529 U.S. 266, 276 (2000) (Kennedy, J., concurring). See *United States* v. *Sierra-Hernandez*, 581 F.2d 760, 763 (9th Cir.), cert. denied, 493 U.S. 936 (1978) (distinguishing unnamed informant who speaks to officer in person from unnamed informant making anonymous telephone call); *Giles* v. *Commonwealth*, 32 Va. App. 519, 524 (2000) (reports from two unnamed persons who approached police officer "were not an anonymous tip," noting that officers can assess credibility of informants who meet with them in person). Here, not only was the encounter face to face, but the man told the officer what he did and where he worked. He appeared both respectable and "concerned." Given the imminent dangers posed by unlawful firearms on the street (especially ones in the hands of "kids"), the information provided by this concerned citizen was sufficiently reliable to justify police action, notwithstanding the fact that he did not wish the defendant and his

In my view, this stop was, either by reference to G. L. c. 140, § 129C, or by reference to the defendant's apparent age, probably justifiable. Unfortunately, the Commonwealth's less than "careful and thorough prosecution," *Commonwealth* v. *Barros, supra* at 620 (Jacobs, J., concurring), both at the evidentiary hearing and in its brief to this court, prevents us from affirming the motion judge's denial of the defendant's motion to suppress. The purpose of the exclusionary rule is to deter police misconduct. *United States* v. *Calandra*, 414 U.S. 338, 347 (1974). *Commonwealth* v. *Sheppard*, 387 Mass. 488, 502 (1982), rev'd on other grounds, 468 U.S. 981 (1984), *S.C.*, 394 Mass. 381 (1985). Here, it appears unlikely that there was any police misconduct at all, and the invocation of the exclusionary rule is mandated instead by the Commonwealth's failure to present the entirety of the factual and legal justification for the officer's actions. As a result, our reversal now terminates a meritorious prosecution of an underage youth who was carrying a loaded handgun concealed on his person as he and his young friends proceeded along the streets of Brockton. "[T]here are few more dangerous street scenarios than that of an adolescent with a gun." *Commonwealth* v. *Barros, supra* at 621 (Jacobs, J., concurring). I thus join in the result reached by the court, but note that it is a regrettable result that was probably avoidable.

---

compatriots to know that he was the one who had alerted the police to their possession of a gun. If reasonable suspicion that a person is carrying a firearm is a sufficient basis for the limited seizure contemplated by G. L. c. 140, § 129C, that threshold was satisfied here.