COMMONWEALTH *vs.* LARRY MOCK.

No. 00-P-3.

Hampden. May 14, 2001. - March 21, 2002.

Present: PERRETTA, BECK, & BERRY, JJ.

*Practice, Criminal,* Interlocutory appeal, Motion to suppress. *Search and Seizure,* Probable cause, Threshold police inquiry, Pursuit. *Constitutional Law,* Search and seizure.

Discussion of the legal principles involved in a threshold police inquiry. [278] At a pretrial hearing on a motion to suppress evidence in a criminal matter, the judge did not err in concluding that the police lacked reasonable suspicion to stop the defendant, who was walking in a residential neighborhood shortly after 10 P.M. while carrying a bulky object under his jacket and who walked at a faster pace when the police approached him, where the judge's finding that the fact that the defendant fit the general description "black male" was not sufficient to constitute reasonable suspicion in the police was not clearly erroneous, and where the judge was not required to regard the character of the neighborhood as a factor in the determination of reasonable suspicion [278-283]; however, the defendant's independent and intervening action of attacking one police officer by throwing the object at him broke the chain of causation and dissipated the taint of the prior illegality, and therefore, the judge erred in granting the defendant's motion to suppress the evidence [283-285].

INDICTMENTS found and returned in the Superior Court Department on March 4, 1998.

A pretrial motion to suppress evidence was heard by *C. Brian McDonald,* J.

An application for interlocutory appeal was allowed by *Ruth I. Abrams,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

*Edward B. Fogarty* for the defendant.

BECK, J. This is the Commonwealth's interlocutory appeal from a Superior Court judge's order allowing the defendant's motion to suppress. See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996). The Commonwealth claims that the judge erred when he ruled that the actions of the police constituted a seizure for which they lacked reasonable suspicion.

*Factual background.* The judge found the following facts. See *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985). At 9:55 P.M. on February 17, 1998, two Springfield police officers, Frederick Peck and John Zollo, responded to 57/59 Federal Street, an address in a residential neighborhood "populated by African-Americans." A woman living at the address reported that a " 'heavier-set black male' attempted to enter the rear door of her [apartment], but was unsuccessful." After searching the immediate area without success, the officers resumed their routine patrol. Minutes later they saw a black man walking north on Federal Street toward the address from which the police had recently come. The man "had a bulky object concealed under his coat. Although it had rained earlier, it was not raining at the time of this observation."

Officer Peck pulled to the curb on the wrong side of the street, hailed the man (later identified as the defendant), and asked to speak to him. The defendant ignored Peck and "continued walking at a faster pace." Zollo, who was not driving, got out of the cruiser, followed the defendant, and again asked to speak with him. Zollo "told the defendant to stop, but the defendant ignored the command. When Zollo got to within two feet of the defendant, the defendant removed the bulky object from his coat and threw it at Zollo." The object, a video cassette recorder (VCR), "struck" the officer in the leg. "The defendant ran but was captured by the officers."

The defendant was arrested for assault and battery with a dangerous weapon (the VCR), G. L. c. 265, § 15A(*b*), and, after police determined that a VCR had been stolen, with breaking and entering, G. L. c. 266, § 16. He was later indicted on the same charges as well as on larceny in a building, G. L. c. 266, § 20, and resisting arrest, G. L. c. 268, § 32B.

Following a hearing on the defendant's motion to suppress, the judge ruled that Zollo's conduct "constituted pursuit and a

seizure" for which the police lacked reasonable suspicion. Accordingly, he suppressed the evidence. (There was no indication that evidence other than the VCR was obtained from the defendant.) The Commonwealth argues this was error, claiming that there was no stop, and that, even if there was, there was reasonable suspicion.

1. *Legal principles.* "A threshold inquiry is justified 'where suspicious conduct gives [an] officer reason to suspect that a person has committed, is committing, or is about to commit a crime.' " *Commonwealth* v. *Grandison*, 433 Mass. 135, 139 (2001), quoting from *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). "In determining whether an officer acts reasonably in initiating a threshold, or investigatory, stop, we view the circumstances as a whole, and consider the 'specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience' " (citation omitted). *Commonwealth* v. *Stoute*, 422 Mass. 782, 790 (1996), quoting from *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968). "Reasonable suspicion cannot be based on a hunch or on good faith, but . . . [s]eemingly innocent activities taken together [may] give rise to reasonable suspicion justifying a threshold inquiry." *Commonwealth* v. *Watson*, 430 Mass. 725, 729 (2000). Ordinarily, "we will . . . not disturb the findings of a judge who saw and heard the witnesses, who was free to make credibility determinations and to accept all, some, or none of their testimony, unless there is a showing of clear error in those findings." *Commonwealth* v. *Scott*, 52 Mass. App. Ct. 486, 491 (2001).

2. *The judge's rulings.* The judge concluded that there was no constitutional violation in Peck's initial attempt to talk to the defendant. We agree. "[Peck] remained in [the] cruiser while asking to speak to the defendant, and he did not impede or restrict the defendant's freedom of movement." *Commonwealth* v. *Barros*, 435 Mass. 171, 174 (2001).

He then ruled that Zollo's action in getting out of the cruiser, following the defendant, and telling him to "stop," "constituted pursuit and a seizure." The case law supports this conclusion. See *Commonwealth* v. *Stoute*, 422 Mass. at 783 ("a person is seized, for purposes of art. 14 [of the Declaration of Rights of the Massachusetts Constitution], when a police officer initiates a

pursuit with the obvious intent of requiring the person to submit to questioning"); *Commonwealth* v. *Barros*, 435 Mass. at 175-176 ("fact that the officer pursued the defendant by leaving his cruiser and walking up to him after being rebuffed is highly relevant in determining whether a reasonable person, in view of all the circumstances, would have felt free to terminate the encounter and leave").

Having determined that the officers had seized the defendant, in the constitutional sense, the judge rested his decision allowing the defendant's motion to suppress on the following points: the lack of detail in the description of the man seen at 57/59 Federal Street; the fact that the man did not succeed in taking anything; and the failure of the police to explain their focus on the defendant. On appeal, in addition to arguing that the judge was wrong on each of these points, the Commonwealth asserts that the character of the area was relevant to the determination of reasonable suspicion. We consider each of these factors in turn.

a. *The description of the defendant.* In determining that the decision to stop the defendant "was but a hunch," the judge concluded that "the fact that the defendant fit the general description 'black male,' was not sufficient to constitute reasonable suspicion." The Commonwealth claims that the man the police saw walking near the Federal Street address fit the description the woman there gave police — "a heavier-set black man wearing dark clothing."

In support of its argument, the Commonwealth relies exclusively on the transcript rather than the judge's findings. Zollo did testify that the woman had described the man she saw at her door as heavier set and wearing dark clothing, and described the man he saw walking in the same terms. He also acknowledged, however, that the booking sheet described the defendant as being of "medium" build, weighing 180 pounds. (He asserted that the booking sheet was incorrect.) On the other hand, Peck testified that he could not remember whether the woman had provided any description of the man's clothing and gave no testimony on the man's appearance other than his race. He described the man he saw on the street only as a "black male." "Where there has been conflicting testimony as to a

particular event . . . , a judge's resolution of such conflicting testimony invariably will be accepted." *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), quoting from *Commonwealth* v. *Spagnolo*, 17 Mass. App. Ct. 516, 517-518 (1984). The lack of a description of the defendant in the judge's findings as other than a "black male" may be, as the Commonwealth claims, "a significant omission." However, because that finding is consistent with Peck's testimony, we do not disturb the judge's finding.

b. *The neighborhood.* The Commonwealth argues that the area "was known to [the officers] from previous arrests" and refers to the neighborhood as a "high crime area." Peck testified that he had made arrests in the area of Federal Street "for breaking and entering, assaults, the sale and possession of illegal narcotics, [and] possession of handguns." There was no further testimony concerning the frequency of these arrests over the years he had been assigned to the area. Zollo testified that he had made "several arrests for narcotic offenses, breaks, assaults, [and] disorderly people." The judge's decision does not refer to the neighborhood in these terms.

In this case, the judge issued his decision within two weeks of the hearing on the defendant's motion. The transcript was not finished until seventeen months later. See Smith, Criminal Practice and Procedure § 1347 (2d ed. 1983 & Supp. 2001) (timing of filing of findings discretionary). It is therefore difficult to determine whether an omission reflects the natural mistakes in note-taking that may occur when one is trying to take notes and listen at the same time or an implicit disbelief of the testimony. (In hearing arguments on the motion, the judge indicated he was referring to his notes.) See generally *Commonwealth* v. *Scott*, 52 Mass. App. Ct. at 489-491. In this case, however, the judge stated that he was "familiar with the area." The omission suggests, therefore, that the judge did not regard the nature of the neighborhood (other than its racial composition) as a factor in the determination of reasonable suspicion, particularly given the defendant's cross-examination of the officers on the characteristics of the neighborhood.

c. *Police suspicion.* The judge also noted that "at the hearing [on the motion to suppress], the officers did not explain their

reasons for attempting to speak to the defendant, and did not assert a belief or suspicion that he was the perpetrator of the attempted break-in or any other offense at the time they sought to question him." The Commonwealth argues this statement was clearly erroneous. In fact, the transcript shows that the officers testified that as they resumed patrol they were looking for a person fitting the description the woman at 57/59 Federal Street provided. However, this error does not affect our analysis. "[R]egardless of the officer's subjective state of mind," *Commonwealth* v. *Smigliano*, 427 Mass. 490, 493 (1998), the judge must determine whether there is reasonable suspicion from the "standpoint of an objectively reasonable police officer." *Ibid.*

d. *Other factors.* The judge also found as a fact that the defendant "walk[ed] at a faster pace" after the police first approached him. The Commonwealth argues that this conduct was the equivalent of "flight" and was therefore "classic evidence of consciousness of guilt," quoting from *Commonwealth* v. *Carrion*, 407 Mass. 263, 277 (1990). While the judge was not required to consider the defendant's conduct as flight, "flight may be considered as a factor in evaluating [an] officer's articulable suspicion." *Commonwealth* v. *Marrero*, 33 Mass. App. Ct. 440, 444 (1992).

Finally, the judge also determined that because nothing was taken in the reported attempted break in, "the fact that the defendant was carrying an object under his jacket was not relevant to a suspicion that he may have attempted the break-in." The Commonwealth counters that "it was reasonable for the officers to infer that the individual who had previously been unsuccessful in [an] attempt to break and enter, may have attempted to break and enter into another place in the area, and that the defendant was carrying the fruits of that other, successful attempt." Even if that were a reasonable inference, the judge was not required to accept it. See *Commonwealth* v. *Scott*, 52 Mass. App. Ct. at 491.

3. *Determination of reasonable suspicion.* We now analyze whether the officers' suspicion was, as the Commonwealth would have it, "grounded in 'specific, articulable facts and reasonable inferences [drawn] therefrom,'" *Commonwealth* v. *Cheek*, 413 Mass. 492, 494 (1992), quoting from *Commonwealth*

v. *Lyons*, 409 Mass. 16, 19 (1990), or as the judge found, only a hunch. *Ibid.* As suggested above, the judge's determination that the Commonwealth failed to establish with sufficient particularity that the appearance of the defendant matched the woman's description of the man who knocked on her door was not clearly erroneous. Nor was the judge required to credit the officers' description of the neighborhood, particularly when he stated that he was familiar with the area. Moreover, even if he had credited this testimony, it did not require a finding that the neighborhood was a high crime area. Nor does the undisputed fact that the defendant was walking toward the Federal Street address aid the Commonwealth. Although the judge's finding that "the officers did not explain their reasons for attempting to speak to the defendant" was as a factual matter incorrect, it does not change our analysis.

We are left then to consider whether there was reasonable suspicion to stop a man walking in a residential neighborhood shortly after 10 p.m., carrying a bulky object under his jacket, who upon inquiry increased his pace away from the police. "While the judge's ultimate findings of fact and rulings of law, as they bear on issues of constitutional dimension, are open for reexamination . . . , such ultimate findings are 'entitled to substantial deference by this court.' " *Commonwealth* v. *Bottari*, 395 Mass. at 780, quoting from *Commonwealth* v. *Bookman*, 386 Mass. 657, 661 n.6 (1982). "The fact that as police officers approached the [defendant] started walking quickly away did not elevate the police officers' inchoate suspicion to the level of reasonableness justifying a stop." *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 72 (1997). We conclude that these facts would not " 'warrant a [person] of reasonable caution in the belief' that [the seizure] was appropriate." *Terry* v. *Ohio*, 392 U.S. at 22. We think it of some relevance that not only did the police not observe conduct that appeared to be criminal, contrast *Commonwealth* v. *Thompson*, 427 Mass. 729, 734, cert. denied, 525 U.S. 1008 (1998) (car double-parked with engine running very late at night in high crime area in front of townhouse subject to narcotics investigation), but it is not clear that a crime was committed at Federal Street. Peck testified that the woman reported someone was knocking on her back door and

when she went to the door and "confronted the person," she saw a black man run away. Contrast *Commonwealth* v. *Mercado*, 422 Mass. 367, 369-370 (1996) (crime had occurred; suspects' actions distinguished them from others in store); *Commonwealth* v. *Barros*, 425 Mass. 572, 582-585 (1997) (man had been beaten and stabbed; witnesses provided detailed information about appearance of defendant). We conclude that there was no error in the judge's determination that the police lacked reasonable suspicion to stop the defendant.

4. *Alternative theories justifying seizure of the VCR.* The Commonwealth also argues that "the VCR . . . was lawfully seized as abandoned property," citing *Commonwealth* v. *Battle*, 365 Mass. 472, 475-476 (1974), and *Commonwealth* v. *Mulero*, 38 Mass. App. Ct. 963, 965 (1995). However, these cases are not on point because the defendants in those cases relinquished the contraband before there was a seizure. Here the defendant threw the VCR in response to Zollo's approach and order to stop. "[A]ttempted disposal of evidence [does not] constitute an independent, intervening act sufficient to justify a subsequent arrest where the disposal is in direct and immediate response to [] illegal police action." *Commonwealth* v. *Borges*, 395 Mass. 788, 796 (1985).

The Commonwealth states that "[t]he VCR which had been concealed under the defendant's jacket, hit Zollo on the shin and gave reason to stop and arrest the defendant on the charge of assault and battery." At the motion hearing, the prosecutor argued that "there was no pursuit of [the defendant] until after a crime had been committed. That is when [the defendant] had thrown the VCR at the officers."

"[I]t is rare for us to consider an argument for reversal of a lower court which is [barely] raised [either in the trial court or] on appeal and is dispositive in favor of the party belatedly raising the issue." *Commonwealth* v. *Morrissey*, 422 Mass. 1, 4 n.5 (1996). See *Commonwealth* v. *Barros*, 435 Mass. at 179-180 (Sosman, J., concurring). We exercise our discretion to consider the issue in this case because the judge appears to have considered the issue and made findings of fact that are supported by the record, contrast *Gagnon, petitioner*, 416 Mass. 775, 780 (1994) (declining to address issue not raised where

record was lacking), and because we do not agree with the judge's legal conclusion, which implicates the safety of the police. See *Commonwealth* v. *Morrissey*, 422 Mass. at 4 n.5. Moreover, given the judge's factual findings, we conclude the defendant could not have put forth a persuasive argument to the contrary.

In his memorandum of decision the judge noted that "[s]tanding alone [the fact that the defendant threw the VCR and fled] might have provided reason to pursue and arrest him." He concluded, however, that because that action "was preceded by police conduct which violated art. 14 of the Declaration of Rights, it did not justify the arrest and search, or the recovery of the VCR." On the facts of this case we disagree. The defendant's "independent and intervening action of attacking [Zollo] . . . broke the chain of causation and dissipated the taint of the prior illegality." *Commonwealth* v. *King*, 389 Mass. 233, 245 (1983), *S.C.*, 400 Mass. 283 (1987).

While "an act by a defendant, which may in some sense be considered 'voluntary,' [will not] necessarily break the causal chain," *Commonwealth* v. *Borges*, 395 Mass. at 795, quoting from *United States* v. *Bailey*, 691 F.2d 1009, 1013 (11th Cir. 1982), cert. denied, 461 U.S. 933 (1983), an unprovoked physical assault on a police officer must have that effect. The defendant's action was more than an attempt to dispose of stolen property in response to being chased by an officer who lacked reasonable suspicion for his interest in the defendant. The defendant could have dropped the VCR and continued running. Instead, as the judge found, he "threw it at Zollo, who was struck in the leg." "Although we must be vigilant to protect Fourth Amendment rights, the privileges of the police in the specific circumstances of [this] case[] should not be measured on too fine a scale." *Commonwealth* v. *King*, 389 Mass. at 247, quoting from *Commonwealth* v. *Saia*, 372 Mass. 53, 57 (1977). "[E]xtending the fruits doctrine to immunize a defendant from arrest for *new* crimes gives a defendant an intolerable *carte blanche* to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct. This result is too far reaching and too high a price for society to pay in order to deter police misconduct."

*United States* v. *Bailey*, 691 F.2d at 1017 (emphasis in original). See *State* v. *Casimono*, 250 N.J.Super. 173, 183-184 (1991), cert. denied, 504 U.S. 924 (1992), citing cases. The judge's ruling on this issue was error. The order allowing the defendant's motion to suppress is therefore reversed.

*So ordered.*