McEvoy, J.
A Suffolk County grand jury indicted Joao Santos, truly Paul Monteiro (“the Defendant”), for assault with a dangerous weapon, unlawful possession of a firearm and ammunition, and receiving stolen property. The Defendant now moves, pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, Article XIV of the Massachusetts Declaration of Rights, and Massachusetts General Law 276 1, to suppress a handgun seized by police on June 9, 1997. This Court conducted a hearing on the motion to suppress on February 3, 2003. For the reasons set forth below, the Defendant’s motion is DENIED.

FINDINGS OF FACT

Officer Jerome Hall-Brewster, (“Officer Hall-Brewster”), is an eight-year veteran of the Boston Police Department. At approximately 1:30 a.m. on the evening of June 9, 1997, Officer Hall-Brewster and his partner Officer Jason Reid (“Officer Reid”), received a radio call to proceed to the Joy Club on Aveiy Street in Boston to respond to an escalating disturbance. The *626 officers knew the Joy Club as the site of numerous fights and arrests. Emergency response teams are dispatched to the club approximately twice per weekend, usually around closing time, which is between 1:30 and 2:30 a.m.
The officers were dressed in uniform and drove a marked police car. Officer Reid drove the vehicle and Officer Hall-Brewster sat in the passenger’s seat. They drove down Washington Street, towards Avery Street. As they approached, they saw a crowd of 15-20 people. At the center of the group was a smaller group of approximately 10 individuals who were pushing and shoving one another. None of the individuals threw any punches. As Officer Hall-Brewster and Reid’s cruiser pulled down Avery Street, another cruiser approached from the opposite direction.
The officers observed the Defendant in the crowd. He was pushing and shoving along with the rest of the individuals in the group. The officers began talking to individuals at the scene to determine who might have information about what happened during the dispute. In an attempt to gather information, the officers decided to talk to the Defendant regarding what had transpired outside the club. The officers did not intend to detain the Defendant because of anything they observed him do outside the Joy Club.
Officers Hall-Brewster and Reid exited their vehicle and began walking towards the Defendant. As they approached, the Defendant started walking towards them, away from the scene. The officers approached the Defendant and said they wanted to talk to him. The Defendant answered by pointing to the scene of the disturbance and saying, “The fight’s over there.” The officers continued to walk toward the Defendant and again informed him of their intention to talk to him by stating, “We know but we want to talk to you anyway.”
The Defendant started to run. He first ran towards the scene outside the Joy Club but then changed direction and ran back up Washington Street, turning onto Boylston Street. Officer Hall-Brewster pursued the Defendant on foot while Officer Reid followed in the police cruiser. Officer Reid lost sight of the chase on Boylston Street and decided to maneuver around the block in the hope of cutting off the chase at a later point.
Officer Hall-Brewster chased the Defendant into an alley between Boylston and Harrison Streets. The alley opens into a parking lot, which, on June 9, 1997, was under construction. Due to the construction, the alley came to a dead end that was barricaded by a chain link fence. The Defendant ran to the fence and could go no further. Officer Hall-Brewster approached him from behind.
The Defendant turned and faced Officer Hall-Brewster. As he turned, he reached into his waistband and pulled out a handgun with his right hand. He pointed the gun at Officer Hall-Brewster, fixing the weapon on the officer. The officer yelled “Drop the gun” and the defendant threw the gun to his right. It landed approximately five-to-six-feet away, near a pile of scrap metal. Officer Hall-Brewster drew his weapon and ordered the Defendant to a prone position on the ground. Another officer, who had responded to a radio call to the scene and joined the pursuit, frisked the Defendant.
Meanwhile, Officer Reid had parked his cruiser on the other side of the fence. He hopped the fence and assisted Officer Hall-Brewster by searching the scrap pile for the abandoned weapon. He recovered a loaded, .25 caliber handgun, which Officer Hall-Brewster identified as the gun that the Defendant had pointed at him.

RULINGS OF LAW

I. The Officers’ Requests to Talk to the Defendant Did. Not Constitute a Seizure

A person is seized when he is no longer free to leave a police interview. Commonwealth v. Borges, 395 Mass. 788, 791 (1985). The “free to leave” standard is an objective one, requiring the court to consider whether the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe “he was not free to turn his back on his interrogator and walk away.” Commonwealth v. Barros, 435 Mass. 171, 173-74 (2001).
To effectuate a seizure that evokes constitutional scrutiny, police must engage in some show of authority that could be expected to command compliance beyond simply identifying themselves as officers of the law. Commonwealth v. Sanchez, 403 Mass. 640, 644 (1988). An officer’s approach, without any direction to stop, does not constitute a seizure. Commonwealth v. Gunther G., 45 Mass.App.Ct. 116, 117 (1998). However, an officer’s authoritarian tone of voice and language may be sufficient to show police authority if, from the officer’s words and deeds, a reasonable person would infer an order to obey. Commonwealth v. Borges, 395 Mass. 788, 790 (1985) (asking person to step out of store, ordering him to remove shoes constituted seizure); Commonwealth v. Grinkley, 44 Mass.App.Ct. 62, 63-64 (1997) (finding seizure when number of officers shouted at youth to remain in place).
In Barros, an officer’s initial inquiry of “Hey, I want to talk to you, come here,” did not constitute a seizure. Commonwealth v. Barros, supra at 176. However, once the officers exited their cruiser, approached the defendant, and continued to question him, they demonstrated what a reasonable person would understand to be a show of police power. Id. at 175-76. Evidence that the defendant did in fact stop after persistent police questioning suggested that he believed, as any reasonable person would, that he was not free to leave. Id. at 176. Further, the court noted that the officer’s persistent questioning and aggressive demeanor demonstrated they did not intend to allow the defendant to leave without answering their questions. Commonwealth v. Barros, supra at 176.
*627 Officers Hall-Brewster and Reid’s repeated requests to question the Defendant did not amount to a seizure. Their approach did not demonstrate a show of police authority nor would their conduct make a reasonable person in the Defendant’s shoes feel as though he was not free to leave. Unlike Barros, a case in which the court found that the officers’ persistent questioning and increasingly forceful attempts to speak with the defendant transformed a valid investigatory stop into an illegal seizure, Officer Reid and Hall-Brewster made only two requests to speak with the defendant and did not become more aggressive toward the defendant during the short time between the initial request and the follow-up request. Commonwealth v. Barros, supra at 176. Moreover, unlike Grinkley, in which the court determined that several officers who advanced on the defendant as they shouted and waved for him to stop constituted a situation so stressful that a reasonable person would have understood the officer’s actions as orders to obey, Officer Hall-Brewster and Reid’s two questions did not amount to commands that suggested the Defendant was not free to leave the encounter. Commonwealth v. Grinkley, supra at 74.
II. A Seizure Occurred When Officers Began to Chase the Defendant
A seizure starts when pursuit begins because, pursuant to the Massachusetts Declaration of Rights, a pursuit designed to produce a stop is no less intrusive than a stop itself. Commonwealth v. Thibeau, supra at 765 (holding seizure starts at pursuit); Commonwealth v. Stoute, supra at 788-89 (distinguishing state from federal constitutional requirements). An individual is seized when a police officer initiates pursuit with the obvious intent that the suspect will submit to questioning. Commonwealth v. Stoute, supra at 789. A pursuit that indicates the suspect would not be free to leave without responding to police inquiry is a seizure because it turns the suspect into the subject of undeniable police authority. Commonwealth v. Stoute, supra at 789. In this case, police seized the Defendant at the moment they began to pursue him.
Ill The Seizure of the Defendant Was Unreasonable Under the Circumstances
A threshold inquiry is justified when an officer has a reasonable and articulable suspicion that the suspect has committed, is committing, or is about to commit a crime. Commonwealth v. Grandison, 433 Mass. 135, 139 (2001); Commonwealth v. Silva, 366 Mass. 402, 402 (1974). Reasonable suspicion depends on the content of the information possessed by police and the reliability of information. Commonwealth v. Stoute, 422 Mass. 782, 790 (1996). Both the facts and the order in which events occur are critical to the establishment of a reasonable and articulable suspicion; therefore, the relevant distinction is not the degree of suspiciousness attributed to any one activity but to the entire series of events. Commonwealth v. Loughlin, 385 Mass. 60, 62 n.3 (1982). “An officer’s suspicion must be reasonable before the stop begins. Were [the courts] to rule otherwise, the police could turn a hunch into a reasonable suspicion by inducing the conduct justifying the suspicion.” Commonwealth v. Barros, supra at 178, quoting Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981).
An individual may choose to ignore a police officer’s inquiries. Commonwealth v. Silva, supra at 406-07. Walking away from an officer and refusing to answer questions, without more, cannot elevate the suspect’s conduct to the level of reasonableness required for a seizure. Commonwealth v. Grinkley, supra at 72 (turning away); Commonwealth v. Barros, supra at 178 (breaking eye contact, refusing to answer questions).
Flight alone does not establish the requisite suspicion to justify a seizure. Commonwealth v. Borges, supra at 796. However, flight, in addition to other factors, can raise suspicion to the level of reasonableness required by law. Commonwealth v. Marrerro, 33 Mass.App.Ct. 440, 444-45 (1992). To meet the requisite level of suspicion, the flight must be supplemented by other factors, such as the location, appearance, or conduct of the suspects. See Commonwealth v. Gunther G., supra at 119; see also Commonwealth v. Grinkley, supra at 72.
In Commonwealth v. Mock, officers were not justified in stopping the defendant because, while criminal conduct may have occurred, the officers had no clear indication that the defendant specifically had participated in the crime. Commonwealth v. Mock, 54 Mass.App.Ct. 276, 282-83 (2002). In Gunther G., officers received a radio report describing the suspects in a shooting as three men with a dog located on a particular street in Boston in the early morning hours. Commonwealth v. Gunther G., supra at 118-19. The court found that officers had a reasonable suspicion to seize a suspect who matched the physical description of the individual involved in the shooting, carried a pit bull, and, when confronted by officers, backed away and stated, “They’re down there,” indicating the presence of two other men. Id. at 119. The court reasoned that, while backing away from officers and pointing to the scene were not alone enough to give rise to reasonable suspicion, the combination of the detailed radio description, the proximify of the defendant to the scene of the shooting at the relevant time period, and the defendant’s flight from police elevated the defendant’s evasive conduct to an articulable suspicion of wrongdoing. Id.
Unlike Gunther G., in which the officer’s suspicions were aroused not only by the defendant’s presence near the scene and unwillingness to talk to police but by the fact that he matched a particular, physical description of the suspect, no such description was known to police in this case. Id. Quite the contrary, Officers Hall-Brewster and Reid admitted that, based on their observations outside the Joy Club, they had no reason to suspect the Defendant was materially involved in the dispute and sought only to ask him investigatory *628 questions. Moreover, unlike the flight in Gunther G, where police suspicion was supported by other, significant indicators of criminal activity, the Defendant, in this case, did no more than refuse to answer officers’ questions before he fled. Id Therefore, while the Defendant’s flight adds to the degree of suspicion present in this case, it is not enough to meet constitutional requirements.
The Defendant’s presence at a scene involving a large number of individuals and unwillingness to submit to police questioning alone, without more, was an unreasonable and, therefore, insufficient basis for police suspicion. Accordingly, Officers Hall-Brewster and Reid violated the Defendant’s rights pursuant to Article XIV of the Massachusetts Declaration of Rights the moment they began to chase him.
IV. The Assault Constituted an Intervening Act that Established Independent Probable Cause to Arrest
The doctrine of “fruit of the poisonous tree’’ prevents the Commonwealth from introducing evidence seized as the result of unlawful police searches. If the evidence at issue is traceable to the illegal search, it must be suppressed. Commonwealth v. Loughlin, supra at 63. However, an initial, impermissible seizure does not protect the defendant from subsequent acts that are the result of his own, willful misconduct. Commonwealth v. King, 389 Mass. 233, 245 (1983). In some instances, these so-called “intervening acts” break the chain between the evidence seized and the illegal search and seizure. Id.
To rise to the level of an intervening act that breaks the chain of an unlawful seizure, the conduct in question must be new and unrelated to the initial search. Commonwealth v. Borges, supra at 796. Attempted disposal of evidence, where the disposal is in direct and immediate response to the illegal police action, does not constitute an intervening act. Id. The combination of flight and disposal of evidence is not enough to constitute an intervening act if those events share a close temporal nexus to the illegal activity of police officers. Id. For example, in Commonwealth v. Painten, the defendant’s action of throwing a package out the window was not an intervening act because it was prompted by officers’ unlawful entry into his apartment. 368 F.2d 142, 144 (1966).
In King, the court found independent probable cause to arrest a suspect who shot at state troopers after he had been stopped in an unconstitutional motor vehicle seizure because the shooting occurred not as a result of the unlawful search but of the defendant’s conscious decision to commit an assault. Commonwealth v. King, supra at 245. The King court held that evidence related to the assault was not discovered as a result of the police misconduct but, rather, the new crime; therefore, the police had probable cause to arrest the defendant for the shooting and to seize any fruits or instrumentalities of that crime. Id.
Similarly, in Mock, the court found that the defendant’s act of throwing a VCR at a police officer after being ordered to stop was an intervening act that broke the chain of causation from an initial, unconstitutional chase because, more than mere disposal of evidence, the conduct constituted a separate and unrelated assault on the arresting officer. Commonwealth v. Mock, supra at 284. The Mock court noted that it was not willing to extend the doctrine of “fruit of the poisonous tree” to immunize a defendant from new crimes. Id. at 284 n.10.
In the instant case, the Defendant’s act of pointing his handgun at Officer Hall-Brewster constituted an intervening act that established independent probable cause to arrest. Unlike in Painten, where throwing a package of drugs out the window was a disposal of evidence that flowed directly from the police’s illegal entry into the defendant’s home, the Defendant, in this case, assaulted Officer Hall-Brewster by pointing the gun at him before disposing of it. Commonwealth v. Painten, supra at 144. As in Mock, where the court found an intervening act when the defendant responded to the officer’s order to hand over a stolen VCR by throwing the VCR at him, the Defendant broke the chain of the illegal pursuit and established probable cause to arrest when he responded to police action by using his handgun to assault Officer Hall-Brewster. Commonwealth v. Mock, supra at 284.
This Court finds the police had probable cause to arrest the Defendant and to seize the fruits of his new and independent crime. Accordingly, the police did not violate the Defendant’s rights pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, Article XIV of the Massachusetts Declaration of Rights, or G.L.c. 276, 1 when they arrested him and retrieved the handgun.

ORDER

For the foregoing reasons, the Defendant’s motion to suppress is hereby DENIED.