COMMONWEALTH *vs.* STEVE A. SAINT LOUIS (and two companion cases[1]). No. 02-P-728. November 10, 2003. *Search and Seizure,* Threshold police inquiry. *Constitutional Law,* Search and seizure.

The Commonwealth appeals from the allowance of motions to suppress. We vacate and remand for further findings.

Officer Simmons of the Bridgewater State College campus police testified as follows. On February 11, 2001, there was a dance on campus. That morning, while he was patrolling the college campus in his police cruiser at about 1:00 A.M., he noticed a Toyota car in a college parking lot with the engine running. He was within ten to fifteen feet of the car and saw that the car was occupied by four people. The two front-seat occupants were black males.[2] When they saw the officer, they seemed "alarmed." The officer watched the four occupants leave the Toyota but was called away to assist another officer. When he returned ten or fifteen minutes later, there was no one in the vehicle. Looking into the car with his flashlight, he saw a half-full capped bottle of Captain Morgan's rum on the floor of the front passenger side, saw wires hanging from the hole where a missing radio should have been, and noticed that the armrest for the driver's side back seat was lying in the middle of the back seat

---

[1]Commonwealth *vs.* Jose M. Casillas and Commonwealth *vs.* Clauroge Murat.

[2]On cross-examination by counsel for defendant Murat, Simmons, when asked, "And the two front, the two people, front people in the car you said were dark skinned?" answered, "No. I said that the front passenger. And then the other individual was pale, pale skinned."

with black cloth protruding from the empty area of the armrest. Simmons checked the license plate with his dispatcher and was informed that the owner, Jose Casillas, was nineteen years old, that he had numerous entries on his board of probation record, and that he was on parole.

Simmons parked his cruiser within forty yards of the Toyota, and awaited the occupants. After twenty minutes, he saw three black males and one with lighter skin approach, enter the Toyota, and drive out of the parking lot. He did not know whether the four were the same persons he had seen earlier. All four appeared to be under the age of twenty-one.

Simmons activated his blue lights, and followed the car out of the parking lot; the car stopped. Prior to stopping the car, Simmons did not know the identity of the driver. Casillas, who was light-skinned, was the driver and produced his license and registration. Simmons told Casillas that he had seen the rum in the Toyota and that he knew Casillas was under twenty-one. The occupants handed two bottles of alcohol to Simmons. Simmons asked if any were old enough to possess alcohol, and Saint Louis, who was sitting in the driver's side back seat, said that he was over twenty-one. The other two passengers said they were under twenty-one. Casillas told the officer that there was more alcohol in the trunk, and Simmons removed a bottle of brandy from there.

Simmons arrested Casillas for being a minor in possession of alcohol, handcuffed and searched him, and placed him in the cruiser. Two other Bridgewater State College campus policemen who were on the scene asked the remaining occupants to leave the Toyota. Simmons searched the car; he characterized the search as an inventory search but there was no evidence of the required written police procedures for inventory searches. See *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 (1988). Simmons noticed the armrest was now in its proper place. He found that it was loose and when he moved it he saw the black cloth he had noticed earlier. Inside the hollow space he found two guns. The three other occupants were handcuffed. The minors were arrested for being in possession of alcohol, and Saint Louis for possession of the firearms. They were transported to the Bridgewater police station and then to the campus police station where they were booked and interrogated. Simmons and the other officers testified about the giving of Miranda rights. There was testimony that during booking, Saint Louis took marijuana out of his pants, and there was testimony relating to statements made by the defendants.

In District Court, all four were charged with various violations of firearms laws. Saint Louis was also charged with possession of marijuana. After the hearing on the motions to suppress and argument, the judge entered the following findings:

"In [*Commonwealth*] v. *Owens*[,] 414 Mass. 595 (1993)[,] a police officer had probable cause to believe that the driver of the car stopped was also the owner absent any indication otherwise. This provided that officer with reasonable cause to stop the defendant in order to conduct a threshold inquiry given that the owner was wanted on felony charges. In this case the court finds that the arresting officer could not reasonably infer that the owner who was under 21 (19) was operating the motor vehicle which contained a partially full bottle of rum.

"There was no evidence of defendant Jose Casillas's physical description.

The area was not well lit. The officer received no photograph of the owner of the car from the dispatcher. Most significantly the arresting officer's testimony is in conflict as to his description of the driver. Initially he described both occupants of the front seat as black males. He later testified that the driver was a light skinned male.

"This conflict in testimony compels the conclusion that this officer really had no idea who the driver was, that there existed only a hunch that the defendant Casillas was the operator of the car; that he could not reasonably infer that Casillas was the driver. [*Commonwealth*] v. *Moses*[,] 408 Mass. 136 (1990). Without this connection the officer did not have the right to stop Casillas's car to conduct a threshold inquiry because he did not have a reasonable suspicion that Casillas had committed[,] was committing or was about to commit a crime. [*Commonwealth* v. *Wren*,] 391 Mass. 705 (1984).

"Accordingly, defendant's motion to suppress evidence is *allowed* and any evidence seized including alcohol and the two guns is suppressed.

"Additionally, any statements are also ordered suppressed as 'fruits of the poisonous tree.' *Wong Sun* v. *United States*[,] 371 U.S. 471, 83 S. Ct. 407 (1963)."

It is not clear from the judge's findings whether the conflict in testimony about the description of the driver led him to conclude that there was insufficient evidence to stop the car for a threshold inquiry or whether he disbelieved Simmons's testimony.[3] If the former, we consider that in a situation where an officer has seen alcohol in a vehicle, knows that its owner is underage, and all four occupants appear to be under the age of twenty-one, see *Commonwealth* v. *Moscat*, 49 Mass. App. Ct. 622, 625 (2000); see also *Commonwealth* v. *Barros*, 435 Mass. 171, 179 (2001) (Sosman, J., concurring), he has reasonable suspicion to stop the car even if he has seen two different males in the driver's seat. In such circumstances, there is reasonable suspicion warranting a stop even without the inference that a vehicle is likely to be driven by its registered owner. See *Commonwealth* v. *Deramo*, 436 Mass. 40, 43-44 (2002), a case decided after the motion hearing in this case. See also *Commonwealth* v. *Owens*, 414 Mass. 595, 599 (1993).

Since we cannot determine the basis for the judge's conclusion, we vacate the order allowing the motions to suppress and remand for further findings. If the judge determines that the stop was warranted, he should also make findings as to the propriety of the scope of the search and the admissibility of the statements, questions that his prior ruling rendered unnecessary to reach.

*So ordered.*

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

*Debra S. Krupp*, Committee for Public Counsel Services, for Steve A. Saint Louis.

*Pamelyn J. Collins* for Jose M. Casillas.

*Shauna Steiger Rives* for Clauroge Murat.

---

[3]At a later point, in testifying concerning Saint Louis's condition at the time of the interrogation, Simmons may have been considered evasive, as his testimony contained numerous instances of "I don't recall" or similar replies.