## Commonwealth *vs.* Clement J. Coleman, Second.

No. 04-P-742.

Worcester. February 14, 2005. - September 16, 2005.

Present: Laurence, Cohen, & Katzmann, JJ.

*Threshold Police Inquiry. Probable Cause. Arrest. Motor Vehicle,* Failure to stop. *Practice, Criminal,* Motion to suppress.

A Superior Court judge erred in allowing a criminal defendant's motion to suppress evidence of his conduct after leaving the scene of an altercation involving motor vehicles on a highway, where the defendant, in starting to leave the scene contrary to a State trooper's direction, violated G. L. c. 90, § 25, thereby giving the police probable cause to arrest him; in such circumstances, there was no basis for application of the exclusionary rule. [561-563]

Indictments found and returned in the Superior Court Department on February 7, 2003.

A pretrial motion to suppress evidence was heard by *Elizabeth M. Fahey,* J.

*Paula[b] Frasso,* Assistant District Attorney, for the Commonwealth.

Cohen, J. The defendant and another driver separately called the police after being involved in an altercation on the highway. When the police began their investigation by speaking with the other driver, the defendant became impatient and told the officers that he could not wait. Despite being directed to remain at the scene, the defendant engaged his vehicle and prepared to leave. One of the officers pronounced the defendant under arrest for disorderly conduct and used the handle of his weapon in an unsuccessful attempt to break the defendant's car window, prompting the defendant to flee and lead the officers on a high-speed chase. Eventually, the defendant was apprehended and charged with assault and battery by means of a dangerous

weapon, to wit, an automobile (G. L. c. 265, § 15A[*b*]), three counts of assault and battery on a police officer (G. L. c. 265, § 13D), resisting arrest (G. L. c. 268, § 32B), disorderly conduct (G. L. c. 272, § 53), and failure to stop for a police officer (G. L. c. 90, § 25).

The defendant filed a motion to suppress, claiming that the police had no justification for detaining and pursuing him, and therefore, any evidence of his conduct after leaving the scene was subject to the exclusionary rule. A judge of the Superior Court agreed and allowed the defendant's motion. On the Commonwealth's interlocutory appeal, we conclude that the defendant's motion should have been denied.

*Background.* After hearing the testimony of three police witnesses,[1] the motion judge found the following facts. On the morning of August 28, 2002, the defendant telephoned the State police to report that, while driving on Route 146, he had just been forced off the road and assaulted by the driver of a truck. Although the defendant became upset and belligerent when the dispatcher asked him for information, he provided his name, telephone number, and social security number.

The dispatcher sent Trooper Robert Johnson to respond, telling him that it was an emergency because the defendant claimed to be an assault victim. The truck driver also called the police at approximately the same time, thus prompting the arrival of Officer Scott LaPlante of the Sutton police department. Both Johnson and LaPlante first spoke with the truck driver for approximately five to ten minutes. During this time, neither police officer approached or communicated with the defendant, who remained seated in his vehicle.

Eventually, the defendant got out of his vehicle, saying, "I don't have all day for this." He made his way toward the officers and the truck, walking along the outside or just inside Route 146. Johnson directed the defendant to stay in his car and said that he would be with him shortly, to which the defendant responded, "I don't have all day. I'll leave and go home." Johnson then told the defendant, "Don't leave because we are

---

[1]The judge heard from the State trooper who received the defendant's telephone call, as well as the trooper and police officer who reported to the scene.

investigating, and you have motor vehicle infractions." Although the defendant had yet to be interviewed, Johnson was considering giving him a citation for the civil infraction of changing lanes, or charging him with operating to endanger, a misdemeanor that had occurred outside the officer's presence and thus was not an arrestable offense.

Contrary to Johnson's instruction, the defendant got back in his vehicle and started to engage it. Johnson responded by approaching and telling the defendant that he was under arrest for being a disorderly person; however, the judge expressly discredited that the officers observed conduct satisfying the elements of this offense. The judge found that Johnson knew that he had not seen such conduct and informed the defendant that he was under arrest only to keep him at the scene.

Even though the defendant had just been told that he was under arrest, he prepared to drive away. Johnson then removed his loaded handgun from his holster, grabbed it by the barrel and, using the handle as a hammer, attempted to break the window of the defendant's car. Johnson testified that, in the past, he had broken numerous windows in this manner.

The defendant drove off at a high rate of speed. The two police officers got into their vehicles and chased the defendant for several miles at the speed limit of sixty-five miles per hour or higher, on what was a busy four-lane highway. Neither officer discontinued the chase even after they saw the defendant switching lanes at high speed. Rather, Johnson accelerated and passed the defendant, intending to use "stop sticks" to deflate his tires. When the defendant saw Johnson's vehicle pass him, he crossed the fifty-foot wide grassy median strip and entered traffic in the opposite direction. The officers did likewise. On three different occasions, the defendant crossed the median strip with the officers following behind him.

The defendant finally came to a stop after a third police officer was called and cut the defendant off by using his police cruiser. However, the defendant did not immediately exit his car as ordered by the police; instead, he stayed inside and spoke on his cellular telephone. Johnson and LaPlante positioned themselves on opposite sides of the defendant's vehicle and smashed its front side windows. Then, each of the officers

inserted a canister of mace or pepper spray into the car and sprayed the defendant's face.

While this was happening, the defendant's vehicle was still moving slowly forward, there was glass everywhere inside the vehicle, and the defendant remained in his seat with his seatbelt fastened as the car traveled five to ten feet before coming to a halt. When the defendant yelled into his telephone that he was being beaten, Johnson shoved his firearm into the defendant's face.

On these facts, the motion judge concluded that even if the police had reasonable suspicion to detain the defendant and conduct a threshold inquiry, Johnson lacked probable cause to arrest the defendant for disorderly conduct or any other crime and used disproportionate force in attempting to keep the defendant at the scene. The judge also noted, in an endorsement denying the Commonwealth's motion for reconsideration, that "the Commonwealth should not be allowed to rely on the results of an improper police chase which never should have begun." Because, in the judge's view, the police pursuit of the defendant was unjustified, she suppressed all evidence, including police observations, obtained as a result. See *Commonwealth* v. *Stoute,* 422 Mass. 782, 789 (1996).

*Discussion.* We apply the requisite standard of review, accepting the motion judge's findings of fact absent clear error, but independently reviewing the judge's ultimate findings and conclusions of law and the application of constitutional principles to the facts. See *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 743 (1990); *Commonwealth* v. *Torres,* 433 Mass. 669, 671-672 (2001).

Whatever one may think about the wisdom of the police response to the defendant's actions,[2] evidence of the defendant's departure and its aftermath was not required to be suppressed.

[2]The record does not indicate that the police had reason to believe that the defendant was armed or dangerous, nor does it reveal whether the officers were in compliance with any applicable policies and procedures concerning high speed chases. The motion judge was of the opinion that it was possible (and preferable) for the police to apprehend the defendant later using information that the police already had obtained, rather than attempting to keep him on the scene by breaking his car window with a loaded weapon and pursuing him in a high speed chase down a busy highway.

The conflicting reports of a serious incident on the highway created reasonable suspicion for the responding officers to conduct a threshold inquiry of both the defendant and the truck driver. Although the defendant was kept waiting for five or ten minutes, the police were pursuing their investigation, and this length of time was not unreasonable in the circumstances. See generally *Commonwealth* v. *Barros*, 425 Mass. 572, 583-584 (1997); *Commonwealth* v. *Laaman*, 25 Mass. App. Ct. 354, 364, cert. denied, 488 U.S. 834 (1988).

Then, despite the fact that the inquiry was not complete, and contrary to Johnson's direction, the defendant started to leave the scene. By doing so, he violated G. L. c. 90, § 25, which mandates that persons operating a motor vehicle submit to uniformed police when signaled to stop. The police therefore had probable cause to arrest him. See G. L. c. 90, § 21.

In these circumstances, there was no basis to apply the exclusionary rule to suppress police observations of the defendant's conduct after he left the scene. Indeed, even if the defendant's flight had been precipitated by police actions that violated his constitutional rights, his failure to stop would have been an independent unlawful act that "broke the chain of causation and dissipated the taint of [any] prior illegality." *Commonwealth* v. *King*, 389 Mass. 233, 245 (1983). See *Commonwealth* v. *Mock*, 54 Mass. App. Ct. 276, 284-285 (2002); *Commonwealth* v. *Gomes*, 59 Mass. App. Ct. 332, 337 (2003).

The statutory requirement that motorists stop for police brooks no exception — even for a driver who reasonably believes that police detention is unjustified. If there is no legitimate basis for the stop, the driver's recourse is not through flight with its attendant risks to others, but through the orderly judicial process. Here, the defendant's reckless efforts to elude the police, including multiple lane changes and three U-turns across the median strip of a busy highway, well illustrate the public safety concerns that underlie the statute.

Our decision is limited to the application of the exclusionary rule. The result is only to allow the Commonwealth to rely upon evidence, including police observations, obtained after the defendant's failure to comply with the officer's instruction to stop. We do not consider whether the defendant has a defense to

any of the charges against him based upon the actions of the police, since the viability of any such defense necessarily will depend upon the evidence adduced at trial. See *Commonwealth* v. *Moreira*, 388 Mass. 596, 602 (1983); *Commonwealth* v. *Gomes*, *supra* at 342-343.

*Conclusion.* The order allowing the defendant's motion to suppress is vacated, and a new order shall enter denying the motion.

*So ordered.*