Fabricant, Judith, J.
INTRODUCTION
The defendant is charged with trafficking in cocaine, possession of heroin, and assault with a dangerous weapon. The charges arise from an incident in which a Stoughton Police detective searched the defendant’s vehicle in a store parking lot. The defendant'now moves to suppress all evidence seized as a result of the search. For the reasons that will be explained, the motion will be denied.
FINDINGS OF FACT
After an evidentiaiy hearing conducted on January 22, 2007, the Court finds as follows. On Friday, January 27, 2006, at about 1:30 in the afternoon, Detective Brian Smith of the Stoughton Police Department was in the parking lot of the B.J.’s Wholesale Club on Technology Drive in Stoughton. Detective Smith has worked as a narcotics detective for the past six and a half years, and has received substantial training regarding the narcotics trade. He has extensive experience in narcotics investigations in the Stoughton area, and is familiar with practices in the narcotics trade in the area. Technology Drive, where the B.J.’s Wholesale Club is located, runs off of State Route 24. Several other large stores and restaurants, in addition to B.J.’s, are located along Technology Drive. B.J.’s has a large parking lot, with an entrance from Page Drive as well as one from Technology Drive. As Detective Smith was aware from substantial previous experience, the B.J.’s parking lot, with its two points of access and proximity to Route 24, has been a favorite location for drug dealing in Stoughton. He has partic *287 ipated personally in many drug seizures there and is aware of other Stoughton officers having done so.
Detective Smith was alone, in plainclothes, with a gun in a holster attached to his belt at his right side, and a badge also attached to his belt. He was driving an unmarked cruiser. The weather was clear. The B.J.’s store was open, and a number of cars were in the parking lot. As Smith drove through the parking lot, he noticed a blue taxicab bearing “Friendly” insignia. The Friendly Cab company was familiar to him as operating in Stoughton. The cab was parked in a parking spot located a substantial distance away from any other parked cars. Two men were inside, in the driver’s and passenger’s seats. Smith drove past the front of the cab and made eye contact with the men. He then drove around the store and back into the parking area. At that time, he saw the blue Friendly cab following a green Chiysler minivan with a female driver and a male in the front passenger seat.[1] Both passed Smith, and he then fell in behind them.
Smith followed the two cars to a row of parking spaces adjacent to the side of the store, where the two parked in spaces side by side, the minivan to the left of the cab. Immediately after pulling into its parking space, the cab began to back up. Smith stopped his cruiser behind the cab, blocking its exit. He then got out of his cruiser, drew his gun, and yelled to the occupants of both vehicles “police, put your hands on the dashboard where I can see them.” All four complied. Smith holstered his gun, opened the passenger door of the van, put his left hand on the passenger, later identified as Juan Acosta, ordered him out, and began to escort him toward his cruiser. When they reached a point near the rear of the minivan, Acosta ran off. Smith did not chase him, but instead returned to the still-open passenger side door of the van and ordered the defendant to step out. She did not obey, but instead began to move the van abruptly in reverse at an angle toward the cab. Smith, perceiving a danger that he would be struck by the open passenger door, jumped onto the hood of the cab. The right rear of the van struck the left rear of the cab. The defendant then went forward and backed up again at a wider angle, this time striking Smith’s cruiser. At that point, Smith went around the front of the van, pointed his gun at the defendant, and ordered her to put the van in park and turn off the engine. She did not obey. He then opened the driver’s door, put the van in park, shut off the engine, forcibly pulled the defendant out, handcuffed her, and called for back up. Lieutenant Murphy and Officer Bonnie arrived within a few moments, and one of them took custody of the defendant.
Smith then interviewed the driver of the cab, identified as Gary Skiffington. Smith asked him where the drugs were. Skiffington responded that he had never had a chance to buy drugs because he had seen Smith, thought he was a police officer, and told “the guy” that police were in the parking lot. Smith asked Skiffington what his intentions were, to which Skiffington replied that he had intended to meet “the guy” to buy “a forty,” which Smith understood as a quantity of cocaine commonly sold for forty dollars.[2] With that information, Smith proceeded to search the van. He opened the rear passenger door, where he discovered a small child in a car seat. After securing the child ip a cruiser, he returned to the van. On the floor in the area between the front seats he found a quantity of loose cash and an aerosol can labeled “Big Puncture Seal.” Familiar with the use by drug dealers of cans with false bottoms, Smith manipulated the can and succeeded in removing the bottom. Inside he found a quantity of white powder in individually wrapped packages. Later analysis determined the substances to be thirty-three grams of cocaine and three tenths of a gram of heroin.
CONCLUSIONS OF LAW AND DISCUSSION
The defendant argues that the evidence found in the search of the minivan must be suppressed as the fruit of a seizure amounting to an unlawful arrest. Evaluation of that claim requires separate consideration of each of a series of events over the course of Detective Smith’s interaction with the defendant.
A seizure occurs when a police officer, “by means of physical force or show of authority, has in some way restrained the liberty of a citizen.” Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). A limited seizure, short of arrest, does not require probable cause; reasonable suspicion is enough. See id. at 21-22, Commonwealth v. Moses, 408 Mass. 136, 140 (1990); Commonwealth v. Thibeau, 384 Mass. 762, 763 (1981); Commonwealth v. Silva, 366 Mass. 402, 406 (1974). Reasonable suspicion must be based on specific and articulable facts and specific reasonable inferences that follow from those facts in light of the officer’s experience. Silva, 366 Mass. at 406. The facts and inferences must be viewed as a whole. Thibeau, 384 Mass. at 763.
Where reasonable suspicion exists, police may conduct a threshold inquiry to confirm or dispel the suspicion, provided that they use no more than the level of force that is reasonably necessary to do so. For the encounter to fall within the category of an investigative stop justified by reasonable suspicion, rather than an arrest requiring probable cause, the degree of intrusion on the individual’s personal security must be proportional to the degree and nature of the suspicion. See Commonwealth v. Sinforoso, 434 Mass. 320, 324-25 (2001); Moses, 408 Mass. at 140; Commonwealth v. Borges, 395 Mass. 788, 793-94 (1985). In considering proportionality, the Court looks to the degree to which the defendant’s movement is restrained, the degree of force used, and the extent of the intrusion. Commonwealth v. Sanderson, 398 Mass. 761, 766 (1986). See also Grasso and McEvoy, Suppression Matters Under Massachusetts Law, §4-4(a) (1999).
*288 Here, specific, articulable facts provided some, although not strong, reason to suspect that the occupants of the minivan were in the B.J.’s parking lot for the purpose of a drug transaction. The location of the cab when Smith first saw it, with the two men sitting in it, making eye contact as he passed, warranted the inference that their purpose was something other than shopping at B.J.’s. When Smith saw the cab following the minivan, and then the two vehicles parking side by side, he could reasonably infer that the cab’s purpose involved interaction with the occupants of the minivan. When he saw the cab begin to back up immediately after pulling into the parking space, he could reasonably infer that its driver had noticed his surveillance and decided to abort the mission. These observations together, in the context of the Stoughton Police Department’s experience with drug dealing in the B.J.’s parking lot, warranted some degree of suspicion that the occupants of the two vehicles intended to engage in a drug transaction. The level of suspicion warranted, however, was not high. Smith had no other information about these vehicles or their occupants, and did not see any interaction between them, or any unlawful conduct of any kind. Innocent explanations for their presence and movements come readily to mind.
The information Smith had, in the context of his experience, justified a threshold inquiry, accomplished by means of the least intrusion that would be sufficient for the purpose. What Smith did was park his cruiser behind the cab, blocking its exit, and then get out of his cruiser, draw his gun, and command all four occupants of the two vehicles to put their hands on the dashboard. His blocking the cab did not restrain the liberty of this defendant, but his command to all four, with weapon drawn, certainly did. Although all four complied with Smith’s command, he then immediately enlarged the intrusion by ordering Acosta out of the minivan and escorting him toward his cruiser. The defendant, although not the direct object of this additional restraint, was necessarily affected by it, as it effectively prevented her from leaving the scene with her passenger.
In the Court’s view, Smith’s handling of this initial inquiry was disproportionate to the grounds for his suspicion. Most significant was his approaching the vehicles with his gun drawn. The drawing of a weapon is in itself a substantial intrusion on an individual’s liberty and security, warranted only where specific information gives rise to a safety concern. See Commonwealth v. Bottari, 395 Mass. 777, 780-82 (1985); compare Commonwealth v. Barros, 425 Mass. 572, 583-84 (1997). Other than the general association between drugs and violence, Smith had no information to suggest any danger. He had nothing to indicate that any of the people involved had a history of violence, or that any of them was carrying a weapon or had ever done so. He was alone and outnumbered, but that circumstance resulted at least in part from his own choices; he chose to approach the vehicle prior to observing any transaction, but did not call for back up until after he had taken the defendant into custody. Compare Commonwealth v. Torres, 433 Mass. 669, 674-75 (2001) (lone officer who encountered six occupants of vehicle stopped for traffic violation was justified in drawing weapon after occupants disobeyed orders).
The obedient response of all four occupants provided no basis for increased suspicion. Nevertheless, Smith immediately removed Acosta from the van and moved him toward the cruiser. That action, in the Court’s view, was unjustified in the circumstances. At that point, Smith had nothing more than he had when he first approached; he had a set of circumstances warranting reasonable suspicion of a planned drug deal, sufficient to justify the least intrusive inquiry sufficient to confirm or dispel his suspicion. He could properly have made inquiry of the occupants of the vehicles as to their identity and business, while doing so observing from outside the vehicles whatever might be in plain view inside. He could, perhaps, have detained them long enough to check motor vehicle and criminal records. Such inquiry might have generated information that would have justified further intrusion. What he had, however, provided no basis for his treatment of Acosta. Smith’s conduct up to this point must therefore be treated as an unlawful arrest of both Acosta and this defendant.
Acosta’s flight thus occurred in the context of an unlawful arrest. That context raises considerable question whether his flight may properly be considered as an additional basis for suspicion of this defendant. See Commonwealth v. Thibeau, 384 Mass. at 764; Compare Commonwealth v. Wilson, 52 Mass.App.Ct. 411, 414-15 (2001) (passenger’s flight upon lawful stop for traffic violation properly considered as part of basis for pursuit); Commonwealth v. Sweezey, 50 Mass.App.Ct. 48, 52 (2000) (defendant’s attempts to evade police after lawful investigatory stop properly considered as basis for probable cause to arrest). For purposes of this analysis, the Court assumes that it does not, and that Smith’s subsequent order to the defendant to exit the van was unlawful.
It does not necessarily follow, however, that the evidence seized from the van must be suppressed. The defendant, having been subjected to an unlawful arrest, was not thereby immunized from consequences for criminal conduct. She was entitled to leave, but not to commit crimes while doing so. In attempting to leave, she drove recklessly, striking two vehicles and putting Smith in fear that she would strike him with the door of her vehicle. She also, Smith could reasonably believe, attempted to leave after having been involved in a collision causing property damage. Her conduct, entirely independent of any suspicion of drug activity, provided grounds for her arrest. “These acts broke the chain of causation and dissipated the taint *289 of the prior illegality.” Commonwealth v. King, 389 Mass. 233, 245 (1984); see Commonwealth v. Coleman, 64 Mass.App.Ct. 558, 562 (2005). Having observed that conduct, Smith had lawful grounds to arrest this defendant, and was entitled to do so.
Having at that point arrested the defendant lawfully, Smith was entitled to detain her while he interviewed Skiffington. Skiffington was an identified informant who gave information contrary to his own interests; these facts established his reliability. See Commonwealth v. Atchue, 393 Mass. 343, 347-48 (1984). His statement to the effect that he had arranged to make a purchase from Acosta, together with Smith’s observations of the two vehicles, was enough to indicate a likelihood that drugs would be found in the minivan. Smith therefore had probable cause to search the minivan. The evidence found was thus the product of a lawful search, despite the illegality in Smith’s initial approach.
CONCLUSION AND ORDER
For the reasons stated, the Defendant’s Motion to Suppress is DENIED.

Smith identified the occupants of the minivan in his testimony as black or Hispanic. He did not identify the race or ethnicity of the occupants of the cab. He did not articulate any role of race or ethnicity in his thought process about inferences to be drawn from his observations, but his identification raises a disturbing question on the point.

Smith apparently understood “the guy” to refer to Acosta. That interpretation was reasonable in the circumstances.