## COMMONWEALTH vs. STEVEN KOLODZIEJ.

No. 05-P-1840.

Hampden. October 18, 2006. - May 31, 2007.

Present: RAPOZA, C.J., LAURENCE, & GREEN, JJ.[1]

*Search and Seizure,* Automobile, Probable cause.

A Superior Court judge properly denied the criminal defendant's motion to suppress evidence seized from his automobile during a stop, where even if the initial seizure was not justified, the defendant's erratic operation of his vehicle after the initial seizure, including a struggle with a passenger and repeated switching of seats while the car was still in motion, amounted to an independent unlawful act that broke the chain of causation and dissipated the taint of any prior illegality. [201-205]

INDICTMENTS found and returned in the Superior Court Department on June 12, 2003.

A pretrial motion to suppress evidence was heard by *Thomas J. Curley, Jr.,* J., and the cases were heard by *Mary-Lou Rup,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

RAPOZA, C.J. The defendant, Steven Kolodziej, appeals from convictions of operating a motor vehicle while under the influence of intoxicating liquor (subsequent offense) and receiving stolen property (a license plate). He claims that the motion judge erred in denying his motion to suppress, arguing that the initial seizure of his automobile was unlawful and that all evidence flowing from that event should have been excluded from evidence at trial. The motion judge, after hearing, concluded that the initial seizure of the defendant's vehicle was

[1] Justice Laurence participated in the deliberation on this case prior to his retirement.

not supported by probable cause, but that the defendant's actions thereafter dissipated any resulting taint, as they constituted a new crime that amounted to an independent, intervening act. We affirm.

*Facts.* We take the facts as found by the motion judge, supplemented by the uncontested testimony at the motion hearing.[2] State police Trooper Jeffery Roberts was on patrol on Interstate Highway 391 on April 9, 2003, at 5:42 P.M., monitoring the highway for motor vehicle violations. Interstate Highway 391 is a six-lane highway, and on the evening in question, the traffic was moderate. Trooper Roberts was seated in his marked cruiser in the breakdown lane parallel to the flow of traffic and was observing approaching vehicles in his rear and side view mirrors. The defendant was driving a sport utility vehicle and was accompanied by an individual named Paul Garrison. Trooper Roberts observed the defendant's vehicle traveling in the center lane at approximately fifty-five miles per hour, which was within the posted speed limit. After noting what he thought to be an expired inspection sticker on the defendant's vehicle Trooper Roberts pulled into traffic and followed the defendant for approximately one-quarter mile. At that point, the defendant's vehicle left the highway.

Trooper Roberts activated his cruiser's blue lights as soon as the defendant's vehicle entered the exit ramp, where he followed the vehicle from a distance of approximately fifteen feet. His view of the defendant's vehicle was unobstructed. According to Trooper Roberts, at that point the defendant "jump[ed] out of the driver's seat and there was a struggle going on, he was ripping the passenger out of the front seat and basically stuffing him in the driver's seat." As these events occurred, the defendant's vehicle was traveling at approximately twenty to twenty-five miles per hour. Next, the vehicle veered sharply on the ramp, grazing the guardrail at least three times. Because Trooper Roberts believed he was witnessing a domestic altercation, he radioed for the assistance of additional troopers. He

[2]State police Trooper Jeffrey Roberts was the only person to testify at the hearing on the motion to suppress. The motion judge expressly credited the trooper's testimony. See *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007).

then observed further struggling as the two travelers switched positions again. This time, the passenger pulled the defendant back to the driver's seat.

As the vehicle approached the end of the ramp, the defendant suddenly jumped into the rear of the vehicle, leaving Garrison to take the wheel, even though the vehicle was still moving between twenty and twenty-five miles per hour. Garrison "jam[med] on the brake" before the car left the ramp area, and the vehicle went onto a grassy median and skidded to a stop. Trooper Roberts got out of his cruiser, shouted instructions to Garrison to turn off the engine, and ordered him to leave the vehicle. Garrison complied.

At this point, according to Trooper Roberts, the defendant was "darting all about the inside compartment" of the vehicle and was "rummaging in a paranoid manner in the interior compartment." While it appeared to Trooper Roberts that some type of fight had occurred inside the vehicle, the trooper could not tell whether the defendant was trying to hide or to retrieve something, possibly a weapon.

The trooper feared for his safety and drew his firearm. When the back-up troopers arrived at the scene, the defendant opened the rear hatch door from the inside in an attempt to leave the vehicle. Trooper Roberts ordered the defendant to remain inside the vehicle and to show his hands because he "had no idea if [the defendant] had a weapon or whether his intentions were to flee or attack." The defendant at first ignored the trooper's instructions, but eventually placed his hands in the air. Trooper Roberts then ordered the defendant out of the vehicle.

Once Trooper Roberts had the defendant physically restrained, he looked inside the vehicle and observed that it was full of empty beer cans and a liquor bottle. Trooper Roberts advised the defendant of his Miranda rights and placed him in the cruiser. Based on the defendant's operation of the vehicle and his demeanor and conduct at the scene, Trooper Roberts charged him with operating a motor vehicle while under the influence of intoxicating liquor.

*Discussion.* The defendant claims that it was error to deny his motion to suppress all evidence derived from the seizure of his vehicle. "In reviewing a ruling on a motion to suppress, we ac-

cept the [motion] judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). *Commonwealth* v. *Dillon D.*, 448 Mass. 793, 795 (2007). Moreover, "our duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996). See *Commonwealth* v. *Almonte*, 444 Mass. 511, 515-516, cert. denied, 546 U.S. 1040 (2005); *Commonwealth* v. *Clark*, 65 Mass. App. Ct. 39, 43 (2005).

At the hearing, Trooper Roberts testified that he saw the color of the defendant's inspection sticker as the defendant drove past, and this observation led him to conclude that it was expired. The motion judge, however, found that Trooper Roberts did not see the month noted on the inspection sticker, and determined that color alone was not sufficient to support the trooper's conclusion that the sticker was expired. Consequently, the judge ruled that Trooper Roberts's activation of his cruiser's blue lights as he followed the defendant's vehicle onto the exit ramp amounted to a seizure, in a constitutional sense, and was not justified.[3]

We need not determine the correctness of the judge's ruling on this issue. In these circumstances, the defendant's erratic operation of his vehicle *after* the initial seizure, including the struggle with the passenger and the repeated switching of seats while the car was still in motion, amounted to an "independent unlawful act that 'broke the chain of causation and dissipated the taint of [any] prior illegality.' " *Commonwealth* v. *Coleman*, 64 Mass. App. Ct. 558, 562 (2005), quoting from *Commonwealth* v. *King*, 389 Mass. 233, 245 (1983).

Here, the motion judge specifically found that the defendant's actions following the trooper's activation of the cruiser's blue lights supplied "probable cause to believe that the defendant operated his motor vehicle recklessly, or negligently so that the lives or safety of the public might be endangered, in violation

---

[3]The Commonwealth does not dispute that, in the circumstances presented, the trooper's activation of the cruiser's blue lights constituted a seizure. See *Commonwealth* v. *Smigliano*, 427 Mass. 490, 491-492 (1998).

of G. L. c. 90, § 24(2)(a)." Accordingly, the judge rightly concluded that the defendant's commission of an independent, intervening crime supplied a valid basis for his subsequent arrest. See *Commonwealth* v. *King, supra*; *Commonwealth* v. *Coleman, supra* (defendant violated G. L. c. 90, § 25, by driving off at a high rate of speed while swerving through several lanes of a four-lane highway, thus dissipating the taint of the prior unlawful arrest). See also *Commonwealth* v. *Mock*, 54 Mass. App. Ct. 276, 284-285 (2002) (defendant's throwing of a video cassette recorder at a police officer was an intervening criminal act, although the officer's initial pursuit constituted an unconstitutional seizure).

The rationale for this rule is that even an unjustified stop or seizure by the police should not shield a defendant from arrest for any subsequent, unrelated offense he may commit.

> "[E]xtending the fruits doctrine to immunize a defendant from arrest for *new* crimes gives a defendant an intolerable *carte blanche* to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct. This result is too far reaching and too high a price for society to pay in order to deter police misconduct."

*Commonwealth* v. *Mock, supra*, quoting from *United States* v. *Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982), cert. denied, 461 U.S. 933 (1983).

The second reason for this rule is grounded in a concern for public safety. Even after an unjustified stop or seizure by the police, a defendant's recourse is not through erratic and illegal driving "with its attendant risks to others, but through the orderly judicial process." *Commonwealth* v. *Coleman*, 64 Mass. App. Ct. at 562. See *Commonwealth* v. *Moreira*, 388 Mass. 596, 600 (1983) ("[A]n arrestee may be reasonably required to submit to a possibly unlawful arrest and to take recourse in the legal processes available to restore his liberty"). In sum, the position asserted by the defendant not only encourages dangerous driving in circumstances such as these, but also "would frequently result in far graver consequences for both the officer and the occupant than the unlawful [seizure] itself." *Commonwealth* v. *Gomes*, 59 Mass. App. Ct. 332, 343 (2003).

The defendant also argues that the "new crime" does not remove the taint of the initial seizure by Trooper Roberts, because the defendant was never cited for the additional offense of operating to endanger. We agree with the motion judge that this distinction is of no consequence. As the judge stated, "[T]he officer's failure to issue a citation [for operating to endanger] is irrelevant; the question is whether, under the facts and the law, probable cause existed." Where an arresting officer has probable cause to conclude that a defendant has committed an independent, intervening criminal act, the particular crime with which the defendant is ultimately charged is irrelevant, as long as the police arrested and charged the defendant in light of the subsequent criminal conduct. Similarly, in a case such as the one before us, the specific offense listed on a citation is not decisive, as long as it was issued in response to the defendant's further criminal acts following the initial seizure by the police.

Here, there was probable cause for Trooper Roberts to conclude that the intervening acts of the defendant amounted to the operation of a motor vehicle so as to endanger. That the trooper's subsequent observations led him to determine that the defendant had committed the more serious offense of operating a motor vehicle while under the influence of intoxicating liquor does not alter the fact that the defendant's independent, intervening criminal act dissipated the taint of any prior unlawful seizure of his vehicle.

Furthermore, this is not a situation like *Commonwealth* v. *Borges*, 395 Mass. 788, 797 (1985), upon which the defendant relies. In *Borges*, the court noted in passing that the defendant was not cited for the alleged intervening conduct, and "[t]here [was] no indication . . . that the police officers undertook the arrest with consideration of the defendant's intervening acts." *Ibid.* Consequently, the taint in *Borges* persisted, and court reversed the order denying the defendant's motion to suppress. *Ibid.* In the present case, there was probable cause for the trooper to conclude that the defendant was operating to endanger, although the defendant was cited for the more serious offense of operating under the influence of intoxicating liquor after his condition became obvious to the trooper. It is evident that the manner in which the defendant operated his vehicle,

which constituted an independent, intervening criminal act, was taken into consideration both at the time of his arrest and when the final charges were brought.

*Conclusion.* The defendant's subsequent conduct having dissipated the taint of any prior unlawful seizure of his vehicle, his motion to suppress was properly denied.

*Judgments affirmed.*