COMMONWEALTH *vs.* CRAIG FELICE.

No. 96-P-1795.

Hampden. February 5, 1998. - May 7, 1998.

Present: BROWN, PORADA, & SPINA, JJ.

*Constitutional Law,* Waiver of constitutional rights, Admissions and confessions. *Waiver. Mental Impairment. Practice, Criminal,* Waiver, Admissions and confessions, Voluntariness of confession. *Evidence,* Admissions and confessions.

At a hearing on a criminal defendant's motion to suppress a statement given by the defendant to police prior to his arrest, the judge properly concluded that the defendant possessed the requisite mental state to make a valid waiver of his Miranda rights [709-711] and, in the totality of the circumstances, the actions of the police in repeatedly assuring the defendant that he would get psychiatric help did not render the statement involuntary [711-714].

INDICTMENT found and returned in the Superior Court Department on March 29, 1994.

A motion to suppress evidence was heard by *Richard F. Connon*, J., and the case was tried before *Mary-Lou Rup*, J.

*John M. Thompson* for the defendant.

*Lori K. Odierna*, Assistant District Attorney, for the Commonwealth.

PORADA, J. The defendant was convicted of arson of a building in the Maple Tree industrial complex in Palmer. On appeal, he claims error in the denial of his motion to suppress a taped statement given by him to police prior to his arrest for the arson on the grounds that neither his waiver of Miranda rights nor his statement was voluntary. We affirm.

1. *Waiver of Miranda rights.* The defendant argues that he did not possess the requisite mental state to waive his Miranda rights. While the motion judge found that the defendant had been to a mental health clinic on the same day he gave his

statement to the police, suffered from a personality disorder, and was depressed, agitated, and highly emotional at the time of his interview with the police, he found the defendant nonetheless able to make a knowing and voluntary waiver.

In reviewing a judge's determination that a voluntary waiver was made, the judge's subsidiary findings will not be disturbed absent clear error. *Commonwealth* v. *Libran,* 405 Mass. 634, 639 (1989). We also give substantial deference to the judge's ultimate findings, but we make our own determination whether the judge correctly applied the law to the findings. *Ibid.*

In concluding that the waiver was valid beyond a reasonable doubt, *Commonwealth* v. *Edwards,* 420 Mass. 666, 669 (1995), the judge properly considered the totality of circumstances leading up to the waiver, including the conduct and characteristics of the defendant and the details of the interrogation. *Commonwealth* v. *Hooks,* 375 Mass. 284, 289 (1978). We summarize those circumstances.[1]

Six days prior to giving the statement in question, the defendant, who was twenty and had had prior contact with the criminal justice system, was questioned by the police, based on his claim that he knew who set the fire at the industrial complex. On that occasion, the defendant gave the police the names of three men who set the fire. Upon investigation of those individuals, the police determined they were not involved in the fire. On the day of the statement which is the subject of the motion, the defendant, at the request of his probation officer, visited a local mental health clinic where he was an outpatient. He was apparently seen by a counselor or doctor and after denying any suicidal thoughts was released from the clinic. Several hours later, he was arrested by the Palmer police for assault and impersonating a police officer. Upon his arrest, he was given his Miranda rights, which he chose to exercise, and was placed in a cell. While confined to the cell, he began banging on the cell walls with his hands and legs. Hearing the noise, the police chief removed the defendant from his cell and brought him to his office. After an interval, he was returned to the cell and again removed by the chief when he resumed banging the walls. Upon this second removal, he informed the chief that he wanted

---

[1]The facts are drawn from the motion judge's findings and from the uncontroverted and undisputed portions of the evidence adduced at the hearing on the motion to suppress. *Commonwealth* v. *Santiago,* 410 Mass. 737, 738 n.2 (1991).

to talk to him about the fire. The chief stated that he could not discuss the fire with him without a waiver of his Miranda rights and that the discussion would have to take place with the State police officers in charge of the investigation. The defendant was then returned to his cell.

Two State police officers, Lieutenant Corry and Trooper Mazza, arrived several hours later to interview the defendant. Before the interview commenced, the police arranged for the defendant's uncle to come to the station and talk to the defendant. The officers also offered the defendant food, but he elected to have hot cocoa only. At the outset of the interview, Corry gave the defendant Miranda warnings, and then Mazza repeated them. The defendant acknowledged that he understood them; however, he found it difficult to sign his name to the Miranda card waiving his rights, but he did sign his name and expressed a willingness to talk to the officers.

The interrogation was conducted in a small interview room at the Palmer police station by Mazza in the presence of the Palmer police chief. The defendant was tearful and emotional in the interview, but his answers to questions were lucid and responsive. Mazza spoke in a friendly, understanding manner and in a soft tone of voice. He repeatedly assured the defendant that he was sympathetic to him and wanted to help him. The defendant, after first disavowing any information and expressing fear, acknowledged that he set the fire. The interview lasted approximately two hours.

In those circumstances, we conclude the judge was justified in concluding that the defendant's waiver of his Miranda rights was valid. See *Commonwealth* v. *Rodriguez,* 425 Mass. 361, 366-367 (1997) (even if defendant was depressed at time of confession, this would not require a finding that waiver of Miranda rights was involuntary).

2. *Voluntariness of the confession.* The defendant argues that his confession was the product of psychological coercion resulting from Mazza's interviewing technique in which Mazza repeatedly offered the defendant psychiatric help. The motion judge found that Mazza's interviewing technique was not such as to make the defendant's confession involuntary, for he neither misled the defendant nor used any form of trickery or subterfuge. The judge also found that there was nothing out of

the ordinary in Mazza's promises of help and that promises of help are not coercive.[2]

The voluntariness of the defendant's statement requires a separate inquiry from the determination of the validity of the Miranda waiver. *Commonwealth* v. *Magee*, 423 Mass. 381, 387 (1996). Here again, we look at the totality of the circumstances attending the statement, *id.* at 388, to determine whether the Commonwealth proved the statement was voluntary beyond a reasonable doubt. *Commonwealth* v. *Cryer*, 426 Mass. 562, 566 (1998). While the promise of psychiatric help standing alone will not invalidate a statement, it may if the help is offered as a quid pro quo for the statement, *Commonwealth* v. *Magee*, *supra* at 387-389, or if it, in the totality of circumstances, overbore the defendant's free will, inducing in him a belief that help, rather than punishment, would be forthcoming, *Miller* v. *Fenton*, 741 F.2d 1456, 1467 n.21 (3d Cir. 1984), rev'd on other grounds and remanded, 474 U.S. 104 (1985). Unlike the *Magee* case, there was no bartering of help in exchange for a confession. Rather, the issue here was whether the police officer's promises of help were so manipulative that they overcame the free will of a person with the defendant's characteristics. See *Miller* v. *Fenton*, 796 F.2d 598, 611 (3d Cir.), cert. denied, 479 U.S. 989 (1986).

Although the judge found that the defendant was depressed, highly emotional, and agitated at the time of the interview, he implicitly rejected the testimony of the defendant's expert that the techniques used by the officer overbore the defendant's free will. Although we view the issue a close one, we conclude that in the circumstances of this case the technique used by Mazza may not fairly be deemed so manipulative as to have deprived the defendant of his ability to make an unconstrained decision to confess.

We set forth a synopsis of the taped interview. At the outset of the interview, Mazza, in a friendly, courteous, and respectful manner, sought to find out from the defendant who set the fire. When the defendant expressed a reluctance to answer Mazza's questions, Mazza told the defendant that he believed the fire was a cry for help from the defendant and that he was willing to get help for the defendant. Mazza continued to repeat his desire to help the defendant and to get the defendant some help.

---

[2]At the time of the judge's decision, the judge did not have the benefit of the decision in *Commonwealth* v. *Magee*, 423 Mass. 381 (1996).

The defendant countered repeatedly with statements that he did not want to go to jail and he knew they were going to put him in jail. Finally, Mazza stated:

> "Well, let's try to get you some help instead of trying to get you to go to jail. I don't want you to go to jail, okay that's not my goal, my goal is to get people like you help. I have made attempts, I've been on committees to try to get the juvenile fire-setter program, because most of my fires that I investigate are kids, young people that set fires. Okay. That is my biggest dilemma. If I could get people the help they need they wouldn't set second and third fires."

The defendant then retorted: "I didn't set that fire on purpose." Thereafter, Mazza continued to press the defendant for details about the fire, accompanied by continued offers of help. The defendant responded by slowly disclosing details of his role in setting the fire. At one point, he disclaimed any memory of how he got into the building and, after Mazza's urging him to tell him how he did, the defendant responded by saying: "The judge is going to look at me and he's going to say, you're going to jail." At that point, Mazza told the defendant that he could not tell him what the judge was going to say or not say.

Later in the interview, the Palmer police chief injected himself in the interview by stating to the defendant:

> "Remember this afternoon we were talking and you said, Chief, I really need some help. And I said, to you then, you need the help and you're asking for it, I'll get it for you. Now you got another fellow over here telling you, if you want some help he'll get it for you?"

The defendant answered: "I just want to get my help and go home." After Mazza responded, "Okay," the defendant said again: "I don't want to go to jail." While we have little doubt that Mazza's repeated assurances of help and sympathetic words helped the defendant to unburden himself, we do not believe that the statement was involuntary. The defendant was given Miranda warnings and, thus, knew at the outset that if he confessed he would be prosecuted. Throughout the interview he made remarks indicating that he knew he could go to jail if he confessed. In particular, after Mazza had told him that his goal

was to get him help and not put him in jail, the defendant remarked, "The judge is . . . going to say, you're going to jail." At no time did Mazza indicate that the defendant would not be prosecuted and would not go to jail. The defendant's remarks, also during the interview, showed a recognition that Mazza was simply doing his job as a police officer. Accordingly, based on the totality of the circumstances, we decide that the judge properly could conclude that the defendant's free will was not overborne by Mazza's interviewing technique.

*Judgment affirmed.*